(No. 33467.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* FRANK A. FINKS *et al.*—(FELICITE OGLESBY CENCI *et al.*, Appellants.)

*Opinion filed November 26, 1956—Rehearing denied Jan. 23, 1957.*

SORLING, CATRON AND HARDIN, of Springfield, for appellants.

LATHAM CASTLE, Attorney General, of Springfield, (MARK O. ROBERTS, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

In 1944 a large segment of Route 66 was designated by the Department of Public Works and Buildings as a freeway, pursuant to the Freeway Act. (Ill. Rev. Stat. 1955, chap. 121, pars. 335, 336, 337.) Thereafter this eminent domain proceeding was instituted in the circuit court of Logan County to acquire certain land and to extinguish or limit the rights of access, air, light and view of the owners of certain property abutting Route 66 in the vicinity

of the city of Lincoln. Defendants own property abutting the highway. None of their land was to be taken, but the petition sought to limit their rights of access and to extinguish their rights of air, light and view. Their motion to dismiss the amended petition was overruled, and after the evidence was heard the jury returned a verdict awarding them $500 as compensation for the rights which were taken. Judgment was entered on the verdict, and defendants appeal.

The petition for condemnation, as amended, contained the following description of the property rights to be taken from these defendants:

"The Southwest Quarter (SW¼) of the Southeast Quarter (SE¼) and the Southeast Quarter (SE¼) of the Southwest Quarter (SW¼) of Section 24, Township 20 North, Range 3 West of the Third Principal Meridian, all situated in the County of Logan and State of Illinois.

"That all rights or easements of access, crossing, light, air and view which might otherwise be enjoyed over the freeway designated as Federal Aid Route 5 by that portion of the above described property abutting the said Freeway are to be extinguished, except that the existing direct access entrance from the East line of said Southwest Quarter (SW¼) of the Southeast Quarter (SE¼) Section 24 shall remain in effect and operation only so long as the land served thereby is used for residential or farming purposes. It is further understood that the said entrance located at the East line of the said Southwest Quarter (SW¼) of the Southeast Quarter (SE¼) of Section 24, is provided for the sole benefit of the owners, their heirs, and assigns and that the Department of Public Works and Buildings shall have the right, in its discretion, to take such measures as may be deemed necessary to prevent or limit the use of said entrance by the public.

"It is further understood that if and when the Defendants Felicite Oglesby Cenci and Allessandro Cenci, their heirs and assigns, construct a frontage road on the above described land designated as Tract 9-A, abutting the freeway designated Federal Aid Route 5 (U.S. 66), access from the said frontage road to the main highway traffic lane of the said freeway will be provided by the Department of Public Works and Buildings of the State of Illinois by way of a connection at the west line of the Southeast Quarter, Southwest Quarter, Section 24, Township 20 North, Range 3 West of the Third Principal Meridian, which point of connection will be opposite and northerly of the Jefferson Street

Connection to said Freeway. The said connection shall be constructed in accordance with the governing dimensions as set forth in the policy of access control then in force by the said Department of Public Works and Buildings, except that in no event shall the length of this connection between the pavement and the frontage road exceed the length of the connection to be constructed on Jefferson Street between the frontage road and the pavement opposite and southerly of this location."

The defendants' property is a farm of some 396 acres. The highway runs east and west at this point, and defendants' land abuts the highway on the north for a distance of half a mile. The land that abuts the highway on the south is within the city limits of the city of Lincoln. Defendants' farm is bisected by Kickapoo Creek. Approximately 150 acres lie south of the creek, and the only public highway to which practical means of access can be had from this southern portion is the Route 66 belt line. The amended petition, in describing the land from which the rights of access, air, light and view were to be taken, mentioned only the 80 acres lying immediately adjacent to the highway. At the trial the court excluded all evidence with respect to the remaining 70 acres on the south side of Kickapoo Creek and rejected the defendants' offer of proof as to its ownership. This ruling is assigned as error.

When property is being taken by eminent domain and the owner feels that other property, not described in the petition is damaged, he is required to file a crosspetition describing that property. (*Central Illinois Public Service Co. v. Lee,* 409 Ill. 19.) Defendants did not follow this procedure, and they contend that it is not applicable here because none of their land is being taken, and so there is no possible consequential injury to one tract of land as a result of the taking of another. Rather, it is the defendants' theory that since the object of the proceeding is to assess the value of the rights of access, air, light and view being taken, the proper measure of damages should be determined from the decline in value of the entire property affected by the taking. And inasmuch as access to

150 acres of defendants' property will be limited as a result of this action (unless Kickapoo Creek is bridged), the defendants reason that all 150 acres should be mentioned in the petition, and not just the 80 acres that abut the highway.

The argument has a logical appeal, but we think it is impractical. The State is interested in acquiring the rights of direct access to the highway. The more remote the property is from the highway, the greater the probability that the damage, if any, will be consequential. Here, in the case of farm land, the State has pursued its title search back a quarter of a mile from the highway. We agree with the trial court that the area described was sufficient to enable the jury to determine the nature of the property, and to ascertain its highest and best use. Beyond that point the condemnor can hardly be required to explore either the ownership of the land or its configuration. If the defendants felt that other land was injured, they should have filed a cross-petition describing that land.

Another contention of the defendants is that the Department exceeded its statutory authority when it attempted to condition the use of the existing entrance at the east line of their property by the phrase "so long as the land served thereby is used for residential or farming purposes." The contention is based on the language of section 3 of the act, which authorizes the Department "to extinguish by purchase or condemnation any existing rights or easements of access." (Ill. Rev. Stat. 1955, chap. 121, par. 336.) The power to extinguish, the defendants argue, is not the power to condition.

Modern traffic conditions have made it necessary to establish limited access roads for through traffic, and many States have enacted statutes to that end. (See 43 A.L.R.2d 1072-1081.) In congested areas complete extinguishment of existing rights of direct access may be necessary. In areas where there is less intensive traffic, as in agricultural

areas, some limited direct access may be permitted to abutting owners without unduly endangering through traffic. Retention of such limited access not only accommodates the interests of the abutting owners; it also reduces the damages which must be paid by the State. 3 Stanford L. Rev. 298; 27 Wash. L. Rev. 111.

In our opinion the statutory power to "extinguish any existing rights * * * of access" must mean the power to extinguish those rights of access that unduly impinge upon the flow of traffic on the freeway. Defendants suggest no purpose which might have prompted the legislature to require the acquisition of access rights beyond the extent necessary to protect through traffic. (Cf. *Onondaga Water Service Corp.* v. *Crown Mills,* 230 N.Y.S. 691, 698-9.) And indeed, if the statute was construed to require the State to acquire property it does not now need, and will not need in the forseeable future, doubts as to its constitutionality would arise. (*Miller* v. *Commissioners of Lincoln Park,* 278 Ill. 400.) We hold therefore that the State is not required to extinguish completely all rights of access of property abutting upon existing highways which are designated as freeways. What is involved in limiting rights of access, rather than extinguishing them, is not, as defendants urge, an exercise of the zoning power. The power involved is that of eminent domain and the condemnor is required to pay the difference in value caused by the limitation of access.

When rights of access are only partially extinguished, however, those taken must be clearly distinguished from those that remain. Responsibility for accurate description of the rights to be taken rests on the condemnor, not on the property owner or the court. The final contention of the defendants is that in this case the Department did not comply with this duty in its amended petition.

The first objection is to that portion of the petition that relates to the existing entrance at the east line of the de-

fendants' property. All rights of access are to be extinguished "except that the existing direct access entrance * * * shall remain in effect and operation only so long as the land served thereby is used for residential or farming purposes." The question is whether the limitation to "residential or farming purposes" refers to farm residences or to residential subdivisions. It is undisputed that the land served by the existing entrance is used as a farm and a farm residence, and it is arguable that the reference to continued access at the "existing" entrance "so long as" the property is used for the purposes stated, indicates a continuation of the present use. That there is ambiguity, however, is shown by the fact that on oral argument counsel for the Department took the position that the existing entrance could be used as a means of access to a residential subdivision. That ambiguity was not resolved in the instructions to the jury or in the judgment, both of which reiterated the language of the petition.

The second objection to the adequacy of the petition concerns the access to be provided at the west line of defendants' property. The west line of defendants' property is opposite Jefferson Street, a north and south street in the city of Lincoln. The Department is permitting access to the highway from Jefferson Street at this point. The original petition allowed the defendants no access except the existing entrance at the eastern boundary of their property. The amended petition allowed defendants access for commercial and residential purposes at the west boundary of their property opposite Jefferson Street. Access at this point, however, was conditioned upon the defendants' construction of a frontage road on their property.

That the defendants are to have access to the highway at this point for commercial and residential uses of their property is clear from the petition, but the terms upon which access is to be permitted are obscure. The sentence, "The said connection shall be constructed in accordance

with the governing dimensions as set forth in the policy of access control then in force by the said Department of Public Works and Buildings, except that in no event shall the length of this connection between the pavement and the frontage road exceed the length of the connection to be constructed on Jefferson Street between the frontage road and the pavement opposite and southerly of this location," is susceptible of the interpretation that the State has undertaken to construct a connecting road for a distance of not more than 156 feet (the length of the Jefferson Street connection) on the defendants' property. The Department's engineer testified, however, that the State did not intend to do any work on private property, and that the petition means that the State will afford a connection from the slab of the highway pavement to the north edge of the right of way, providing the necessary culvert and pavement. He testified also that the reference to the length of the connection refers to the maximum number of feet over which the State would assert control as to the type of road the defendants may build on their property. Here, too, the instructions and the judgment followed the language of the petition.

It may be that the jury was not misled. The verdict was within the range of the testimony. The jury might well have discounted as too conjectural the testimony of the defendants' witnesses as to the possibility of using the property for residential or commercial purposes, for they had seen the property as well as aerial photographs of the surrounding area. But we are unable to say with assurrance that they did, or that they understood clearly what rights were being taken. Moreover, from the petition and the judgment the respective rights of the Department and the defendant cannot be clearly determined in the event of future controversy.

There is in the record a strong flavor of self-induced inability on the part of the defendants to understand the

petition. This aspect of the case in all likelihood influenced the trial court in its disposition of the case. We are not insensitive to this consideration, but we feel that the ends of justice will be better served by requiring of the Department a higher degree of precision in describing the rights which it is acquiring.

The judgment of the circuit court of Logan County is reversed, and the cause is remanded to that court.

*Reversed and remanded.*