Merrimack,
No. 5002.

RICHARD A. MORTON *v.* STATE.

Argued March 6, 1962.

Decided June 5, 1962.

138

*Upton, Sanders & Upton* (*Mr. Frederic K. Upton* orally), for the plaintiff.

*William Maynard*, Attorney General; *William F. Cann*, Assistant Attorney General; *Ronald H. Bean*, Law Assistant (*Mr. Bean* orally), for the State.

BLANDIN, J.   The first question transferred is, "Did the State take from the plaintiff by the layout of August 1, 1957, existing rights of access, light, air and view to and from Concord thru-pass from the adjoining triangular parcels of land at the northwest and southwest corners of the plaintiff's motel tract?"

The answer to this important question depends first upon whether the plaintiff's predecessor in title, Charles J. McKee, the former mayor of the city of Concord, possessed rights, which he transferred to the plaintiff, of access, light, air and view to and from the thru-pass from his adjoining land, a large tract north of Bridge Street, including the two triangular pieces at the northwest and southwest corner which were taken by the State from the plaintiff by the condemnation proceedings of August 1, 1957.

It seems to us clear that McKee did have such easements and that his right of access included not only his right to go to and from his land, but also to have his premises accessible to others. *Cram* v. *Laconia*, 71 N. H. 41, 52; *Tilton* v. *Sharpe*, 84 N. H. 43, 45.   This right is appurtenant to land abutting on highways and exists when the fee of the highway is owned by the public, as well as when it is in private ownership. *Tilton* v. *Sharpe, supra*; Annot. 73 A.L.R.

2d 652, 656-658. While the right of access may be limited by regulation, it cannot be taken without compensation. *Webb* v. *Maine-N. H. Bridge Authority*, 102 N. H. 91, 94; Annot. 73 A.L.R. 2d, *supra.*

The question of whether McKee conveyed his rights of access, light, air and view to the State by his deed of November 1, 1948, as corrected in his subsequent conveyance of May 22, 1950, presents far more difficulty. Since the latter deed was executed and recorded after McKee's transfer to the plaintiff of March 28, 1950, it is obvious that it cannot affect the latter's interests which are governed by the conveyance of November 1, 1948. McKee's first deed contrary to what had been the general practice previously, which was to convey to the State only an easement, was a conveyance in fee. The interpretation of this deed, upon which depends the answer to the problem presented by this case, is for our court. *Pettee* v. *Chapter*, 86 N. H. 419, 428. This interpretation rests upon the intent of the parties which we must gather from the words of the instrument in the light of the surrounding circumstances, including the applicable statutes. *Pettee* v. *Chapter*, *supra;* see also, *Elliott* v. *Ferguson*, 104 N. H. 25.

In 1945 the Legislature provided for a new type of highway, which was to serve the needs of speedy and safe through travel, in the following terms by R. L., *c.* 90, Part 7, *s.* 1 (Laws 1945, *c.* 188), now RSA 236:1: "For the purposes of this chapter, a limited access facility is defined as a highway especially designed for through traffic, and over, from, or to which owners or occupants of abutting land or other persons have no right or easement or only a limited right or easement of access, light, air or view by reason of the fact that their property abuts upon such limited access facility or for any other reason." In section 2 of the same chapter, it is specifically provided that "all property rights acquired under the provisions of this part shall be in fee simple . . . . " In contrast to this, there is no requirement that a fee be taken in the layout of a conventional class I or II highway. RSA 233:1, 2.

The plaintiff stresses the fact that the deed from McKee to the State did not expressly convey any rights of access, light, air and view, although the State was authorized to acquire such rights for the limited access facility under RSA 236:2, *supra,* but that in the condemnation proceedings of August 1, 1957, such rights were specifically taken. He adds that this deed as well as the corrective deed of May 22, 1950, from McKee to the State, did convey slope

or embankment rights beyond the limits of the land transferred. He also points out the contrast between the situation here and that existing in the case of *Wiseman* v. *Merrill,* 99 N. H. 256, involving a dispute concerning the rights of an abutting owner along a limited access highway. There the owner had expressly conveyed to the State all rights of access, air, light and view pertaining to the remainder of his abutting property.

The plaintiff argues in substance that the State could have taken a conveyance of all or part of the disputed rights here involved from McKee and that the circumstances show that they did not do so. *Neuweiler* v. *Kauer,* 107 N. E. 2d 779 (Ohio C. P.). He says that the burden was on the State to make clear exactly what it did take and having failed to do this, he must prevail. *Department of Public Works* v. *Finks,* 10 Ill. 2d 20. He argues that the taking of access and other rights cannot be assumed, but must be expressly declared.

The plaintiff further takes the position that "in substance an existing right of way [Stickney Avenue] was widened by the purchase from McKee and his existing rights of access attached at the new taking line." This, he says, resulted from the conveyance from McKee to the State of land for its thru-way lying between the easterly line of Stickney Avenue, which runs roughly north and south, perpendicular to Bridge Street and parallel to the thru-way, and the westerly line of abutting land retained by McKee. As a result, the plaintiff asserts that his grantor retained rights of access to the "widened" road, now the thru-way.

Under well established law McKee, prior to his deed to the State as owner of a single tract, had no incorporeal rights or easements such as those of access, light, view and air, in favor of one part of his land over another. *Hayes* v. *Moreau,* 104 N. H. 124; *Goudie* v. *Fisher,* 79 N. H. 424. See Restatement, Property, *s.* 450, *p.* 2901. Furthermore, since he was aware by virtue of the notice served upon him on May 14, 1948, some five months previously, that a limited access facility was to be constructed, he was charged with knowledge of the fact that in this situation he would have no rights of access, light, air and view under RSA 236:1. *Wiseman* v. *Merrill,* 99 N. H. 256, 259. In fixing a purchase price, the difficulty and impracticability of attempting to separate the value of rights of access, light, air and view from all or portions of the property deeded to the State are too obvious to require delineation. They furnish persuasive evidence that the parties did not intend to do so

and that the price paid by the State was intended to cover all rights.

In these circumstances, McKee could have retained easements in his remaining land by two methods only. First, he could have expressly reserved such rights in the deed itself. Restatement, Property, s. 473, p. 2969. This admittedly he did not do. The only other means by which easements in the land deeded to the State could have arisen in favor of McKee's remaining property would have been if the circumstances were such that "neither of the parties could reasonably have thought that the right was not [reserved]." *Bean* v. *Dow*, 84 N. H. 464, 469; *Elliott* v. *Ferguson*, 104 N. H. 25.

The burden rests upon the plaintiff here to meet this test. His grantor gave a warranty deed to the State; he did not convey a mere easement as in earlier times was the custom. From his remaining land, now owned by the plaintiff, he had access to Ferry Street on the north of his property and to the proposed service road which was to link Bridge and Ferry Streets. Such easements as the plaintiff now claims were not necessary to the use and enjoyment of McKee's remaining property (*Cf. Kimball* v. *Cochecho Railroad*, 27 N. H. 448) and easements of mere convenience do not arise by implication. *Johnson* v. *Labombard*, 94 N. H. 417, 419.

He also had notice, by reference to the plan he mentioned in his deed to the State, that he had no passage to the new or through road on the west, but he did have access to it by a way to be constructed in the middle of his remaining land. If easements were to have arisen in favor of the property McKee retained, they must have done so at the time he gave his deed to the State. *Ellis* v. *Association*, 69 N. H. 385. The fact that the plaintiff purchased property on March 28, 1950, and thereafter built upon it a motel lends no support to the argument that McKee and the State mutually intended that these easements, beneficial to a subsequent purchaser and motel proprietor, should arise under the conveyance of November 1, 1948. *Elliott* v. *Ferguson*, 104 N. H. 25.

The mention of rights of access, light, air and view in the 1957 condemnation proceedings of the plaintiff's property, as contrasted with their omission in the deed from McKee to the State, does not, as the plaintiff claims, show that no such rights were acquired from McKee by the State by the conveyance of November 1, 1948. The general statement in the condemnation proceedings as to the easements involved was necessary to apply to other owners than

the plaintiff, from whom no lands or rights had previously been taken. Furthermore, it is significant that certain easements in McKee's land in favor of third parties were recorded in his deed to the State, but no reservations such as the plaintiff now claims appear in favor of McKee. While it might have been advisable to have expressly included these rights in McKee's deed to the State, it cannot be said that the failure to do so is decisive in the plaintiff's favor in the circumstances here. McKee's land was not originally taken from him by condemnation proceedings, as in the cases relied upon by the plaintiff, but it was purchased and a warranty deed given voluntarily by him to the State. *Cf. Department of Public Works* v. *Finks,* 10 Ill. 2d 20; *Raymond* v. *State,* 143 N.Y.S. 2d (Ct. Claims) 354, 359. In these cases there were also factual differences from the situation before us.

McKee, as mayor of the city of Concord, cannot be considered a novice in his dealings with the State. As previously suggested, he was aware that a limited access road was to be built, to which he would have no rights of access, light, air or view, or only limited ones. RSA 236:1, 3. See *Wiseman* v. *Merrill,* 99 N. H. 256, 259. The situation before us is in sharp contrast to that existing in cases relied upon by the plaintiff, such as *Webb* v. *Maine-N. H. Bridge Authority,* 102 N. H. 91, where a conventional highway was involved, to which an abutter would have greater rights than to a limited access highway. *Id.,* 96, 97. With full knowledge of the circumstances here, McKee chose to give a warranty deed, reserving no rights to himself though, significantly, he did reserve certain rights for others.

In the return of the layout itself, filed on February 10, 1949, more than a year before the plaintiff purchased his property, certain easements of owners abutting the thru-way were listed as being retained by them, but none were included for McKee. The return bore the notation as to his property: "Previously purchased." No question was ever raised as to this until the plaintiff brought the present proceedings. It is a further indication of the intent of McKee and the State.

The plaintiff's argument that the thru-pass was merely a widening of Stickney Avenue, a conventional highway, and that McKee's rights attached to this widened road, does not require extended consideration. Stickney Avenue, running parallel to the thru-way, has remained a separate road after construction of that facility, and it was so shown on the plan referred to in McKee's deed to the

State. The same plan showed a proposed service road to be constructed on the east side of the thru-pass. These three roads are separate and distinct and cannot reasonably be treated as only a widening or relocation of Stickney Avenue.

Also, it cannot be successfully maintained that Bridge Street was merely widened and that all existing rights pertaining to it remained in the plaintiff's grantor. A section of Bridge Street was relocated and another was transferred to the traffic circle. Both these changes were necessitated by, and were an integral part of, the limited access highway.

In summary of this phase of the matter, we believe McKee, by his deed executed without reservations in his favor, intended to and did convey all his rights of access, light, air and view to the State. If doubts exist as to intent, they should be resolved against him. *Glines* v. *Auger*, 93 N. H. 340, 342. See also, Restatement, Property, s. 476, *comment* c. As to the State's intention, it seems obvious that "the added expense, the delays, the general impracticability of purchasing in driblets the property and rights necessary for the construction of a limited access highway when all could be obtained in one transaction make it extremely unlikely that any such costly and cumbersome method was intended. The whole project was not a piecemeal proposition but a broad and far-reaching plan to lay out a limited access highway and all facilities necessary and appurtenant to it . . . it seems far more likely that the parties intended to bargain for all essential rights at one time than that they planned a succession of purchases." *Wiseman* v. *Merrill*, 99 N. H. 256, 260. The above seems particularly applicable to the situation before us because, as previously stated, of the obvious difficulty and impracticability of any attempt by the parties to separate the value of rights of access, light, air and view from all of portions of the premises deeded by McKee to the State. In short, we hold that the State took from the plaintiff no existing rights of access, light, air and view to and from the thru-pass from the adjoining parcels of his land which it had condemned. The answer to the first question transferred is therefore no.

The second and final question transferred reads: "Is the plaintiff entitled to compensation for depreciation to his remaining property arising from any impairment or destruction of view to and from the same, from Concord Thru-pass, caused by the construction of said Traffic Circle overpass and the changes in grade of the Thru-pass along his adjoining premises?"

The plaintiff concedes that he cannot recover for damages caused by impairment of his view because of a mere change in grade or the construction of an overpass within the limitation of an existing street. *Eaton* v. *Railroad*, 51 N. H. 504, 530, 533; 18 Am. Jur., Eminent Domain, s. 201. However, he states that this rule does not apply where there is a partial taking and that in such instances compensation is payable for damages to the remainder of the property involved. *United States Gypsum Co.* v. *Mystic River Bridge Authority*, 329 Mass. 130, 140. It should be noted in the *Gypsum* case, relied upon by the plaintiff, that compensation was allowed here, contrary to the general rule in such situations, under the express provisions of G. L. (Ter. ed.) c. 79, s. 12. However, the fundamental difficulty with his position in the present situation is that he assumes that he had a right of view when the condemnation proceedings for the taking of his land were begun in 1957. At the time he acquired his property in 1950, the limited access road abutting it had already been laid out. The warranty deed from McKee to the State on November 1, 1948, and other circumstances such as the appointment of the land damages commissioners and their return of layout, were all of record. The plaintiff was put upon notice of these proceedings and of the nature and extent of the authority under which they were instituted and carried out. *Wiseman* v. *Merrill*, 99 N. H. 256, 259.

We have previously held that the plaintiff acquired no rights of access, light, air or view from McKee. The State has never regranted him such. His purchase of the land for the construction of a motel over a year after it was severed from the larger tract cannot create new rights in him, which neither he nor his grantor possessed. *Elliott* v. *Ferguson*, 104 N. H. 25.

In conclusion, the plaintiff did not receive from McKee the easements, which he now claims, when he purchased the land, and he has acquired none since. He is therefore entitled to no compensation for the depreciation of his remaining property due to any impairment of his view caused by the proposed construction.

The answer to the second question transferred is also no.

What we have decided renders unnecessary discussion of other issues raised in the briefs, and the order is

*Remanded.*

DUNCAN, J., dissented; the others concurred.

DUNCAN, J., *dissenting:* I agree that the plaintiff's rights depend primarily upon whether rights of access, light, air and view were conveyed to the State by the deed of his predecessor, Charles J. McKee, under date of November 1, 1948. RSA 236:1, 2. However, I can find in the record no evidence that McKee either conveyed or intended to convey such rights. *Cf. Wiseman* v. *Merrill,* 99 N. H. 256.

The project originated in 1945 as a relocation of a short section of the two-lane Daniel Webster Highway, or Route 3, in Concord, under the statute pertaining to class I highways. R. L., c. 90, Part 4 (Laws 1945, c. 188). In such a proceeding it is not questioned that McKee would have retained his rights of access, light, air and view unless he expressly conveyed them. *Cram* v. *Laconia,* 71 N. H. 41, 52; *Tilton* v. *Sharpe,* 84 N. H. 43; *Webb* v. *Maine-N. H. Bridge Authority,* 102 N. H. 91. So far as the record discloses, the first notice which he received of any purpose to create a limited access highway was a "note" appended to a copy of an ineffective resolution adopted by the Governor and Council on May 10, 1948 purporting to appoint commissioners under Part 7 of chapter 90, R. L. This stated that "a section" of the relocation was intended to be limited access, but that the commissioners were previously appointed under the wrong statute.

After McKee's deed was given, new proceedings were instituted, for alteration of the location of the Daniel Webster Highway, under the limited-access highway statute, in the course of which a return was ultimately filed on February 10, 1949. , This stated that land had been purchased or taken from McKee and others, for the highway, and for a traffic circle "with only such entrances as are shown on the plan"; and that the commissioners had acquired slope and drainage rights on abutting lands. But there was no mention of the acquisition of any rights, limited or otherwise, of access, light, air or view, the taking of which the governing statute authorized if the design of the highway required. RSA 236:2, 3. *Kostrelos* v. *Merrill,* 101 N. H. 317.

Thus I see no warrant for assuming that in November 1948 McKee intended to convey all or any part of his rights of access, light, air or view. There is no evidence that the State then sought them, or later claimed to have acquired them in the return of taking filed in proceedings authorized well after the deed was given. See *Department of Public Works* v. *Finks,* 10 Ill. 2d 20.

The language of the deed itself should be controlling. It is my understanding that a deed of land for a highway, unlike a deed to a private owner, need not reserve easements of access, light, air, or view in favor of abutting land retained by the grantor (see *Wenton* v. *Commonwealth*, 335 Mass. 78, 80), and does not operate to convey or release such rights unless they are expressly mentioned. 3 Nichols, Eminent Domain, *ss.* 10.221 [2], 10.221 [3]; 2 Thompson, Real Property (Perm. *ed.*) *s.* 596. *Cf. Id.*, *s.* 594. See also, *Webb* v. *Maine-N. H. Bridge Authority*, 102 N. H. 91, *supra*. *Cf. Wiseman* v. *Merrill*, 99 N. H. 256, *supra*. I would therefore answer the first question in the affirmative. In view of the contrary answer returned by my associates it would serve no purpose for me to express my views with respect to the second question.