**Pamela A. MacLEAN et al., Plaintiffs, Appellants,**

v.

**PARKWOOD, INC., et al., Defendants, Appellees.**

**No. 6604.**

United States Court of Appeals
First Circuit.

Heard Nov. 1, 1965.

Decided Jan. 11, 1966.

Paul R. Cox, Dover, N. H., with whom Stanley M. Burns and Burns, Bryant & Hinchey, Dover, N. H., were on brief, for appellants.

Shane Devine, Manchester, N. H., with whom Devine, Millimet, McDonough, Stahl & Branch, Manchester, N. H., was on brief, for Parkwood, Inc., appellee.

Before ALDRICH, Chief Judge, and HASTIE * and McENTEE, Circuit Judges.

McENTEE, Circuit Judge.

Plaintiffs, MacLean and Gordon, brought this action in the United States District Court in New Hampshire[1] to

---

* Sitting by designation.

1. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

recover damages for injuries sustained by them as the result of an automobile collision. The collision occurred in the vicinity of the Howard Johnson restaurant owned and operated by the defendant Parkwood, Inc., which is located just off the Rotary Traffic Circle and the Route 1 By Pass in Portsmouth, New Hampshire.

The complaint charged that Parkwood negligently failed to erect and maintain proper signs showing the entrance to and exit from its restaurant; that it negligently permitted misleading and confusing signs to be erected and maintained on adjacent property; that this caused the plaintiffs, who were patrons of defendant's restaurant, to become confused upon exiting from said restaurant and that as a result plaintiffs were involved in the accident in question.

In its answer Parkwood denied that it controlled or had the right to control the establishment and maintenance of the exits and entrance roads connecting its restaurant with adjacent public ways and denied that it had the right to erect or maintain exit or entrance signs. Thereupon Parkwood moved for summary judgment under Rule 56 Fed.R. Civ.P. claiming that the depositions taken in the case show that the parking area from which plaintiffs exited, the approach roads to the highway, and the point where the accident occurred were all on public highway property owned by the state. Parkwood contends that it owes no duty to plaintiffs with reference to erecting proper signs on land adjacent to its property and that it is entitled to a judgment as a matter of law.

The district court found that there was no genuine issue of material fact pertaining to the existence or non-existence of a duty owing from Parkwood to plaintiffs and granted defendant's motion for summary judgment. The case is now before us on plaintiffs' appeal.

The depositions, documents and the oral testimony submitted in connection with the motion for summary judgment reveal the following facts. On the evening of February 9, 1964, the plaintiffs who had patronized defendant's restaurant on their way from Maine to Boston, left the restaurant about 10:30 p. m. to make a stop in the City of Portsmouth before proceeding to Boston. They drove out of one of the usual exits from the restaurant parking area and headed in a southerly direction away from the restaurant building. Miss MacLean was driving. They proceeded beyond the southerly boundary of the Parkwood property, along a public road known as "the old by pass" road; passed a motel situated on their left and a local street running to their left known as Boyd Road. Just before they reached Boyd Road there was a directional sign on the right side of the highway with arrows pointing to the left for Portsmouth and pointing to the right for Boston, Portland and Dover. Miss MacLean saw this directional sign but did not see Boyd Road at the left, and she continued on for a short distance to a "Y" fork in the road. There were no signs at the fork pertaining to the road leading to the left, but there was a "one way" sign pertaining to the road leading to the right. Plaintiffs mistakenly took the road running to the left thinking this was the road to Portsmouth. Instead, it was a one-way entrance from the Route 1 By Pass. After driving a short distance on Route 1, which is a divided highway, plaintiffs discovered they were going south on the north bound lane or wrong side of the divided highway. Before Miss MacLean could correct this situation, her automobile was struck by a north bound vehicle operated by the defendant, Charles J. Dumas. Plaintiffs claim they were exposed to this danger due to the fact they were confused by the misleading sign located just north of Boyd Road and also due to the fact that the defendant had failed to warn them of this dangerous condition.

Defendant's restaurant formerly occupied another site, to the north of its present location. The State of New Hampshire required the old location for highway reconstruction and entered into a "Relocation Agreement" with Parkwood

with reference to the new restaurant site. As it is presently situated the front of the restaurant building is bounded by state property. On this state land is the road which was used by plaintiffs in exiting from the restaurant and also a parking area which is used by Parkwood's patrons.

The evidence also showed that the defendant employed a policeman during the summer months "to keep [its] parking lot in order"; that defendant installed two large floodlights in the parking area; and that during the winter, defendant sometimes employed its own plowing facilities for the removal of snow in the parking area although the state plows "always come through, because that's a state highway * * *."

Construing the evidence in a light most favorable to plaintiffs, the most that could be said is that Parkwood had dominion over or possession of the state property comprising the parking area immediately in front of the restaurant in that it had assumed control there. However, plaintiffs did not allege in their complaints, nor is there any evidence, that defendant had any possession or control over the sign at Boyd Road or the fork in the road where the alleged hazard exists. The fork is situated about four hundred feet from the entrance of the restaurant building and nearly two hundred feet from the southwest border of defendant's property.

 The issue presented here is how far beyond the premises over which defendant had possession and control does its duty of care extend to provide a reasonably safe means of ingress and egress for plaintiffs. It is well settled in New Hampshire that a possessor of real estate is subject to liability for harm caused to invitees upon the premises if the harm results either from the possessor's failure to carry on his activities with reasonable care or from his failure to remedy or give warning of a dangerous condition of which he knows or in the exercise of reasonable care should know. Partin v. Great Atlantic & Pacific Tea Company, 102 N.H. 62, 149 A.2d 860 (1959). The courts of New Hampshire have never imposed a duty of care on an occupier of land beyond the area over which he had possession and control. Thus, this case is one of first impression and we agree with the district court that under the Erie doctrine [2] we must proceed with caution to avoid imposing a duty on Parkwood which would not be imposed by the courts of New Hampshire.

Plaintiffs cited several cases outside of New Hampshire to the effect that a business proprietor's obligation to his invitees extends beyond his legal boundaries. Although some of these authorities recognize the responsibility of the landowner for hazardous conditions existing on the approaches to its property, none of them support the extension of a legal duty to an area which is not in close proximity to the defendant's premises. In all the cases cited, the location of the hazard, although on property beyond the defendant's legal boundaries, bore a special relationship to defendant's business activities. In many of these cases the defendants had "assumed control" or appropriated the adjacent public property to serve their business, such as a walk or passageway between a store and a parking lot, Viands v. Safeway Stores, Inc., 107 A.2d 118 (D.C.Mun.Ct.Apps. 1954), or the sidewalks directly in front of the entrances to the store buildings. Merkel v. Safeway Stores Inc., 77 N.J. Sup. 535, 187 A.2d 52 (1962).

However, in the instant case there is no such special relationship between the situs of the hazard (Y fork in the road) and defendant's restaurant.

 The question has been raised as to whether the defendant had an easement of passage on the road in question.[3]

---

2. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

3. The road in question was classified as a "limited access" highway which is defined as:

"* * * a highway especially designed for through traffic, and over, from, or to which owners and occupants of abutting land or other persons have no right or easement or only a limited right

It appears from the "Relocation Agreement," although not specifically stated therein, that Parkwood had an easement of access in said road. But assuming this to be true, we agree with the district court that this is insufficient to raise a genuine issue of fact as to whether Parkwood had actually or constructively assumed control over that portion of the road where the alleged hazard existed. An "easement of access" is the right which an abutting owner has of ingress or egress to and from his premises and also to have his premises accessible to patrons. Morton v. State, 104 N.H. 134, 181 A.2d 831, 834 (1962); Tilton v. Sharpe, 84 N.H. 43, 146 A. 159, 160 (1929). In the "Relocation Agreement" the state covenanted to pave and maintain all public road and highway areas leading by, in and to Parkwood from any other public highways. At best this might imply a promise on behalf of the state not to close or abandon the road in question so as to guarantee Parkwood a means of ingress and egress to Route 1. However, this alone does not confer on Parkwood any special right, interest, or control in the road itself. This road also served to connect Route 1 with the motel, Boyd Road and other local streets to the rear of the restaurant.

Nor can the imposition of a duty on Parkwood here be based on theories other than appropriation of the state property on which the hazard was located. It is undisputed that there was no active misinformation or misdirection given by Parkwood to the plaintiffs [4] and that any hazards which may have existed were created by the state and not by Parkwood.

In view of the above considerations and inasmuch as the situs of the alleged hazard was on state highway property, a considerable distance from the boundaries of Parkwood's property, we cannot impose a duty on Parkwood here for possible highway hazards that might exist on a public road over which it had no control.

We agree with the district court that this was a proper case for summary judgment. See Thomas v. Furness (Pacific), Limited, et al., 171 F.2d 434 (9th Cir. 1948); Stedman v. Spiros, 23 Ill.App.2d 69, 161 N.E.2d 590 (1959).

Affirmed.

---

or easement of access, light, air, or view by reason of the fact that their property abuts upon such limited access facility or for any other reason. * * *" Revised Statutes Annotated of New Hampshire 1955 (RSA) ch. 236, s. 1.

4. The record shows that plaintiffs did not request any directions from the defendant as to the way to Portsmouth from the restaurant nor were any directions given.