The STATE of Delaware, upon the relation of the STATE HIGHWAY DEPARTMENT, Plaintiff below, Appellant,

v.

14.69 ACRES OF LAND, MORE OR LESS, 31.09 Acres of Land, More or Less, Situate in BRANDYWINE HUNDRED, NEW CASTLE COUNTY and State of Delaware, Marion L. Dougherty and Roy L. Dougherty, her husband, and Ernest Lodge Vail and unknown owners, Defendants below, Appellees.

Supreme Court of Delaware.

Feb. 1, 1967.

Aubrey B. Lank, of Theisen & Lank, Wilmington, for appellant.

Donald W. Booker and Robert Thurston Barrett, Wilmington, for appellees.

WOLCOTT, Chief Justice, CAREY, Justice, and SHORT, Vice-Chancellor, sitting.

CAREY, Justice.

The State, upon the relation of the Highway Department (herein Department), has appealed from a summary judgment entered by the Superior Court in a condemnation case. The judgment was based upon a finding that there was no necessity for taking a tract of 31.09 acres of land. Department contends that this finding is not supported by the record.

Prior to the institution of this action, appellees owned a property containing a total of 60 acres in New Castle County facing a public highway called Harvey Road. The Department is in the process of building a new limited-access dual highway known as Interstate Route I–95, a Federal Aid Project. To provide an access to that highway from Harvey Road, a strip of appellees' land is needed. This strip contains 14.69 acres, and is in the form of an arc cutting through the 60-acre tract, leaving 14.22 acres on one side and 31.09 acres on the other side of the access road. The 14.22-acre section is not involved in this case; no defense is presented to the taking of the

14.69 acres. Appellees do object to the taking of the 31.09 acres, claiming that the Department has no present need for that land. The Department disagrees. It contends (1) that, while it has no expectation of using this tract immediately, it does expect to use it to expand the access facility as soon as the traffic warrants; (2) that, when I–95 is opened to the public, this tract must be completely deprived of its access to Harvey Road because a serious traffic hazard would otherwise exist; (3) that deprivation of access to Harvey Road would leave the tract with no outlet whatever to any public road, and thus greatly lessen its value; (4) that the public interest would best be served by a taking of the entire property and is justified by T. 17 Del.C. § 175. This section reads as follows:

"For the purposes of this subchapter, the Department may acquire private or public property and property rights for controlled-access facilities and service roads, including rights of access, air, view, and light, by gift, devise, purchase, or condemnation in the same manner as such units are now or may, after June 22, 1956, be authorized by law to acquire such property or property rights in connection with highways and streets within its jurisdiction. All property rights acquired under the provisions of this subchapter shall be in fee simple. In connection with the acquisition of property or property rights for any controlled-access facility or portion thereof, or service road in connection therewith, the Department may, in its discretion, acquire an entire lot, block, or tract of land, if, by so doing, the interests of the public will be best served, even though said entire lot, block, or tract is not immediately needed for the right-of-way proper."

Appellees contend (1) that the Department has no need for the property in the reasonably foreseeable future; (2) that the Department has no authority to block off access to Harvey Road from the property, leaving it "landlocked"; (3) that, if it has

such authority, it may exercise it only if it provides another outlet for the owners.

The summary judgment entered below was based solely upon certain affidavits, on the basis of which the Court found (1) that the Department has no immediate need for the tract and no definite plans for its future use; (2) that the proposed taking exceeds the scope permissible under T. 17 Del.C. § 175; (3) that, if that statute be interpreted as justifying this taking, it would be to that extent unconstitutional under Art. 1 § 7 and § 8 of the Delaware Constitution, Del.C.Ann.; (4) that access to Harvey Road can be denied to the owners, provided the Department furnishes an alternate outlet to a public highway and pays damages for the loss of the original access.

I

The first problem we consider is whether the entry of summary judgment is justified by the record. We think not. The holding of lack of need was based upon State ex rel. Sharp v. 0.62033 acres of Land, 10 Terry 90, 110 A.2d 1, affirmed in 10 Terry 174, 112 A.2d 857. That case was decided upon testimony presented at a hearing, not upon a motion for summary judgment. The decision does not condemn a taking for future use which appears reasonably probable within a reasonable time. As Judge Herrmann said (10 Terry at page 99, 110 A.2d 6): "The doctrine of reasonable time ˏprohibits the condemnor from *speculating* as to *possible* needs at some *remote* future time". (Emphasis added). The basic principle relied upon was that the right of eminent domain may not "be exercised unless the property taken is to be devoted to a public use within a reasonable time thereafter". Clendaniel v. Conrad, 3 Boyce 549, 83 A. 1036. The facts were that the Department had no use for the lands until and unless it should find it necessary to widen Centerville Road from a two-lane to a four-lane highway; that there were no existing plans, resolutions, proposals or appropriations for any such widening; that the prospect of doing so was a "mere contemplation" or possibility which might materialize at some indefinite time, possibly thirty years; that the taking was sought chiefly to save money for the State. In short, the attempt to condemn was based upon a mere possibility of need at some unknown time in the future.

The present case may present a completely different situation; certainly, the affidavits in the record do not necessarily require a similar finding. We summarize them in the way most favorable to appellant. The Department originally planned a full clover-leaf to provide access between Harvey Road and I-95. Those plans could not be carried out without the approval of the Federal Bureau of Public Roads, through which ninety percent of the funds will be provided. It was at the Bureau's suggestion that it was ultimately decided to build only half of that clover-leaf at present with the understanding that the other half would be constructed as soon as the traffic warrants.* This change made it unnecessary to use the 31.09-acre tract immediately, but it will be needed when the other part of the clover-leaf is built. No affiant gave any estimate of the probable length of time which will elapse before the additional work will be done, and the record contains no facts or figures which would enable the Court to form an opinion as to that length of time.

■ We must remember that the matter was before the Court on appellees' motion for summary judgment, for the purposes of which the Department was entitled to have the record considered in the light most favorable to it. When so considered, the record does not clearly show that there are presently no plans for the use of this land in the reasonably foreseeable future.

* It may be true that the Department thought the full interchange is immediately needed, and still thinks so, despite the contrary view of the Bureau.

We are accordingly of the opinion that the case must be remanded for a hearing on this issue.

## II

Because Department may not prevail under the theory mentioned above, we will consider certain other arguments which have been presented.

The Court below held that "access to Harvey Road from the 31.09-acre tract can be completely denied by the State Highway Department in the exercise of its regulatory powers, provided that the State Highway Department, regardless of cost, provides an alternate means of access to the general highway system, as well as providing for payment of damages for the loss of original access, all of which is viewed as necessary to meet the constitutional requirement that just compensation be paid". If, as counsel have assumed, this holding was intended to mean that the Department has no power to condemn the right of access to a public road as against an adjoining owner unless it supplies him with some other access to a public highway, we must disagree.

 Most, if not all, authorities concur in the general statement that an owner has a right of access to a public road or street which abuts his land. The right is said to be "in the nature of an easement". Deprivation of that right is held to be a taking which requires payment of compensation. Wolfe v. City of Providence, 77 R.I. 192, 74 A.2d 843; Breinig v. County of Alleghany, 322 Pa. 474, 2 A.2d 842; Mueller v. N. J. Highway Authority, 59 N.J.Super. 583, 158 A.2d 343; Morton v. State of New Hampshire, 104 N.H. 134, 181 A.2d 831; 2 Nichols on Eminent Domain (3d. ed.) § 5.72(1) and § 6.32. Appellees argue, however, that our statutes have not conferred upon the Department the power to condemn this right. We think otherwise. If the affected section of Harvey Road be considered a part of I–95 by virtue of its proximity to the new interchange, the power is clearly within the language of § 175 which authorizes the condemnation of "private * * * property and property rights * * * including rights of access * * *." If the section of Harvey Road be considered not to be a part of I–95 but rather a part of the general highway system, the power is found in § 132 which authorizes the condemnation of any "land, easement, franchise", etc.

 The Department has made a finding that the volume of traffic which will enter and leave Harvey Road to and from the new interchange will be such as to require the blocking of access to abutting lands for certain distances to the north and south of the interchange; that is, the blocking is necessary to prevent the existence of a hazardous traffic condition. This action will deprive the 31.09 acres of any outlet to the highway system. We cannot say that this finding is unjustified or arbitrary; it is within the discretionary power of the Department to make the determination; obviously, our Legislature did not intend the Department to ignore safety factors in planning our highways. We think, therefore, that the Department may block off this right of access but must compensate the owner therefor.

 Moreover, we know of no rule which would compel the Department to provide a new access, nor have we found any cases suggesting the existence of such a rule. The Department may have the right to agree to do so, but we think it is under no duty in that respect; its obligation is to pay just compensation for the property it takes. Cases can be visualized in which a satisfactory substitute outlet could be supplied only at a cost far exceeding the total value of the property affected. The present case may be one of that kind. An affidavit is in the record wherein it is stated that a "vast sum" would be needed to provide another access, as suggested by the owner, because it would be necessary to build a bridge over a creek. This "vast

sum" may mean an amount in excess of the true value of the whole 31.09 acres. Deprivation of access would usually be considered a partial taking, in which the damages would be the difference in value of the whole property prior to the taking and the value of the remainder after the taking. State v. 0.62033 acres of Land, supra. But cases could arise in which deprivation of access might be the equivalent of a total taking in that the land would be practically worthless without access. In the latter event, the condemnor might be obliged to pay the full market value of the property. In such an instance, should the owner be permitted to retain his ownership of the land, although he receives its full value? Cf. United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063. What the constitution requires is that compensation for a taking shall be just to the owner and just to the taker. That rule would hardly seem to limit the condemnor to a taking of part when it must pay the value of the whole, notwithstanding the general principle that a condemnor may take no more than is reasonably necessary for its purpose. Conceivably, it may be this very type of problem which the Legislature intended to provide for in the last sentence of § 175 quoted above.

We do not presently determine the meaning or the constitutionality of § 175; those questions may become moot in this case. Moreover, we think the present record is inadequate for a proper consideration of them. To determine them in this case, we ought to have some finding in the record as to whether the land will have any value after the taking of access to Harvey Road and, if so, whether that value is so minimal as to be inconsequential. Perhaps some evidence is needed concerning this question in order that we, in the event of another appeal, may have a proper background for a more intelligent analysis of the constitutional and statutory questions.

The judgment below must be reversed.