THE DEPARTMENT OF CONSERVATION, Petitioner-Appellant, *v.* HAROLD'S FARM, INC., *et al.*, Defendants-Appellees.

Third District   No. 77-379

Opinion filed December 8, 1978.—Rehearing denied March 8, 1979.

William J. Scott, Attorney General, of Springfield (Roy E. Frazier, Jr., Thomas R. Judd, and George C. Hupp, Assistant Attorneys General, of counsel), for appellant.

Craig M. Armstrong and Robert L. Carter, both of Armstrong & Carter, of Ottawa, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from the order of the Circuit Court of La Salle County granting defendant Harold's Farm's second motion to dismiss and traverse in an eminent domain action brought by the Department of Conservation of the State of Illinois (hereinafter referred to as "petitioner"). The circuit court, on its own motion pursuant to Rule 308 (Ill. Rev. Stat. 1977, ch. 110A, par. 308), found that the interlocutory order granting defendant's motion involved a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate determination of the litigation. Accordingly, it certified the following question to this court:

"Whether the petitioner, considering the totality of the circumstances, has the authority to condemn less than the entire interests of the defendants as to Tract No. 3?"

The petition to condemn in this action was filed on January 5, 1973. It sought to condemn 888 acres in La Salle County for use as part of the Marseilles Conservation Area, which in its entirety will encompass more than 2500 acres. The petition contained legal descriptions of four tracts of land in La Salle County which made up the 888 acres, and it sought to take a fee simple interest in the four tracts, excepting only the coal and mineral rights and the right to mine and remove the same underlying Tract No. 3.

The property, it was alleged, was to be used for the "breeding, hatching, propagation and conservation of wild birds or wild animals, and public hunting grounds; and a wildlife refuge." Named as defendants were Harold's Farm, Inc., the record owner, Mutual Life Insurance Company of New York, as holder of a mortgage on the property, and "unknown owners." Proper notice was given by petitioner. Subsequent thereto, defendant Garrow Gravel Service, Inc., appeared, claiming an interest in the subject property, and Garrow was added as a party-defendant.

Harold's Farm filed a motion to dismiss and traverse, later joined in by Garrow Gravel Service, which motion alleged, among other things, that the petitioner lacked the authority to take the land; that the petitioner was taking more land than it needed; and that the contemplated use was not for the purposes stated, but for a National Guard training area. A lengthy hearing followed, in which the court found that the petitioner had met its burden of showing its authority for the taking, the necessity of the taking, and a valid purpose for the taking, all in accordance with the Eminent Domain Act (Ill. Rev. Stat. 1973, ch. 47, par. 1 *et seq.*). The court entered its order so finding, and, in addition, it also found that the property would be used jointly by the petitioner, for the alleged purposes, and by the Military and Naval Departments of the State of Illinois (hereinafter referred to as "National Guard"). Specifically, the court found that the petitioner had authority to acquire the property for the purpose of exchanging it, under the joint use arrangement, for property held by the National Guard on the shore of Lake Michigan, which was to be converted to conservation purposes. Accordingly, the defendants' motion to dismiss and traverse was denied on August 11, 1975. No appeal was taken from that order. Lengthy discovery followed and also several trial continuances.

On December 20, 1976, Harold's Farm and Garrow Gravel Service filed a second motion to dismiss and traverse, which motion was later amended twice. It is from the order granting this second motion, with respect to Tract No. 3, that the present appeal arises. In that motion, in pertinent part, the defendants alleged (1) that the petitioner had no authority or authorization to take less than a fee simple interest in all the lands, specifically Tract No. 3, and (2) that all rights to Tract No. 3, including the coal and mineral rights, excluded in the petition, would have to be obtained by petitioner if the property were to be used by the National Guard as they contemplated using it, that is, as a firing range. An affidavit accompanying the second motion to dismiss and traverse stated that it had newly come to the defendants' attention that the petition excluded the coal and mineral rights, underlying Tract No. 3, from condemnation. Prior to this time, apparently, these parties had been proceeding as if a fee simple interest in all the property was being

condemned. Objections interposed by the petitioner to the second motion, based upon *res judicata* and estoppel grounds, were overruled, and a new hearing was held.

The defendants presented extensive evidence at the hearing in support of their contention that the petitioner was not condemning all the land that it needed for the proposed uses of the property. That evidence disclosed that the National Guard planned to use part of the Marseilles Conservation Area as a rifle and pistol range. The plans for the firing range indicated that part of Tract No. 3 would be used for the range. The regulations which would govern such firing range operation were admitted into evidence and disclosed that if the land were to be used for a firing range, no unauthorized personnel would be permitted within the range area, including a broad "impact area" surrounding the actual firing range. It was the defense contention that this planned use by the National Guard would be incompatible with the exclusion from condemnation of the coal and mineral rights underlying Tract No. 3, since the mining and removal of coal or other minerals would presumably require personnel to be within the restricted range area.

The defense presented other evidence which purported to show that the Department's exclusion of coal and mineral rights was, in fact, an error occasioned originally by the title examiner who prepared the title commitment on the subject property at the request of the petitioner. Numerous exhibits were introduced and much testimony given concerning the state of title and ownership in the subject tract and its present uses. It is unnecessary to go into any detail as to that evidence since it is largely collateral to the question before us, addressing, as it does, principally, the question of the authority of petitioner to condemn less than the entire interests of defendants in Tract No. 3.

After the presentation of the evidence and arguments of counsel, the trial judge granted the motion to dismiss and traverse as to Tract No. 3. At the time of his ruling he stated:

> "It seems to the Court—and I am not intending by this ruling to say that the State must condemn a whole fee; I am simply saying that under the totality of the facts and circumstances of this case that the Court is of the opinion that the State must take the total fee and not take the surface rights separately from the mineral rights."

At that time he certified for review by interlocutory appeal the question before us:

> "Whether the petitioner, considering the totality of the circumstances, has the authority to condemn less than the entire interests of the defendants as to Tract No. 3?"

We turn now to that question.

The authority of the petitioner Department of Conservation to take

lands by eminent domain is conferred by statute in several places. Section 51 of the Civil Administrative Code of Illinois (Ill. Rev. Stat. 1971, ch. 127, par. 51) provides:

> "The Secretary of Transportation and the Director of Conservation are respectively authorized, with the consent in writing of the Governor, to acquire by private purchase, or by condemnation under the Eminent Domain Act, any and all lands, buildings and grounds for which an appropriation may be made by the General Assembly, to their respective departments."

Section 1.9 of the Game Code (Ill. Rev. Stat. 1973, ch. 61, par. 1.9), under which the proceedings in the instant case were brought, provides:

> "The Department [of Conservation] shall have the power and authority to select and purchase or lease, receive by donation or acquire, in accordance with the laws relating to eminent domain: (a) Suitable lands for the breeding, hatching, propagation and conservation of wild birds or wild animals, (b) Lands or lands and waters to be used as public hunting and fishing grounds, or (c) Lands or lands and waters to be used as wildlife refuges."

It was pursuant to these statutes, after receiving an appropriation by the General Assembly for the acquisition and after receiving the Governor's written consent for such acquisition, that the Department brought the instant eminent domain action to acquire the real property at issue here. The trial court's order, disposing of the first motion to dismiss and traverse, found that the appropriation had been made by the General Assembly and that written consent of the Governor had been given. Nothing in the record from the hearing on the second motion to dismiss and traverse contradicts these findings. The court's previous order finding proper authority, public purpose and necessity stands uncontradicted in the record before us. The issue raised by the interlocutory appeal is not authority, public purpose or necessity. The real question raised on this appeal is who shall decide how much land, or interest therein, will be taken for this particular project.

It is the position of the defense, accepted by the court below, that the petitioner in this case is required to take a fee simple interest in all of Tract No. 3 and that it may not exclude from condemnation, the coal and mineral rights of Tract No. 3, as it sought to do in its petition. The petitioner, on the other hand, argues that such questions, concerning the amount of land to be taken, are discretionary with the agency empowered to take by eminent domain. The petitioner's position is solidly supported in the rule enunciated in *City of Chicago v. Vaccarro* (1951), 408 Ill. 587, 597, 97 N.E.2d 766:

> "The general rule is that where the legislature has delegated to a corporation the authority to exercise the power of eminent

domain, the corporation has also the authority to decide on the necessity for exercising the right, and its decision will be conclusive in the absence of a clear abuse of the power granted. * * *

As to the amount of land appropriated, this court has decided frequently that a corporation having the power to exercise the right of eminent domain will be permitted a large discretion in determining for itself the amount of land to be taken."

Given this well established rule, the question before us then becomes whether the defendants have shown that the petitioner abused its wide discretion in deciding to exclude from condemnation the coal and mineral rights underlying Tract No. 3.

In attempting to show such abuse of discretion, the defense argues that an alleged agreement between petitioner and the National Guard, as evidenced by a letter put in evidence, calls for the acquisition of the subject property in fee simple. In addition, defense argues that the National Guard's plans for use of part of the property as a rifle range necessitates such fee simple acquisition since any mining and removal of coal and minerals would interfere with that planned use.

■■ Even assuming, *arguendo*, the existence of such an agreement and interference from the proposed planned use, it does not demonstrate any abuse of discretion on the part of the petitioner. The petitioner, in its petition, and in its arguments before the trial court, as well as in its briefs to this court, has asserted its belief that the joint purposes for the Marseilles Conservation Area can be achieved, at this time, without the necessity of acquiring the coal and mineral rights underlying Tract No. 3. If the petitioner is mistaken in this belief, and if, as the defense argues, the petitioner has not taken enough land to meet its commitments to the National Guard, so that the Guard's planned use can be accomplished, then those matters are properly ones to be settled between the petitioner and the National Guard in an appropriate proceeding, if need be.

■■ The questions before the trial court in this condemnation case were authority, public purpose and necessity. The petitioner, as noted earlier, has met its burden with respect to these matters, and neither the alleged agreement with the Guard nor its proposed plans for the land indicate that the Department of Conservation abused its discretion in making a decision on how much land will be required. In this connection, we note that the planned firing range is only a proposed plan for the property and that the Adjutant General of the Guard testified that even if the Guard were not able to operate a firing range on the property, it would still be able to use it for other training purposes. We would add, that should the Department, at a later time, feel that acquisition of the coal and mineral rights is necessary, they may file a condemnation action to acquire those rights as well. There is no requirement that the Department condemn all it

shall need in one action. (See *Department of Public Works & Buildings v. Association of Franciscan Fathers* (2d Dist. 1972), 3 Ill. App. 3d 503, 505, 278 N.E.2d 111.) As to the defense allegations that the planned use will interfere with their property rights in the coal and minerals (including the right to mine and remove the same), the proper remedy for the defense is to file a crosspetition for damages to their property rights therein. (*Central Illinois Public Service Co. v. Rider* (1957), 12 Ill. 2d 326, 146 N.E.2d 48.) It would be an invasion of the discretion given the petitioner if, instead of crosspetitioning for damages, the defendants were permitted to force the petitioner, initially, to take the allegedly damaged remainder.

■■ The next argument of the defense, that the petitioner is required by section 2 of "An Act to punish fraud or extravagance in the expenditure of moneys appropriated for public improvements" (Ill. Rev. Stat. 1973, ch. 127, par. 132.52) to acquire the land in fee simple, is without merit. That provision prohibits, through the imposition of criminal sanctions, the expenditure of moneys upon a public work or improvement without first having obtained title, by purchase, donation, condemnation or otherwise, to all land *needed* for such public work or improvement. Nothing therein mandates that the State agencies empowered to take by eminent domain must take a fee simple interest in the land they seek to acquire when they feel less will serve their needs. The State, under the Eminent Domain Act, may acquire a fee interest or a lesser estate. (*Miller v. Commissioners of Lincoln Park* (1917), 278 Ill. 400, 406, 116 N.E 178; *Department of Public Works & Buildings v. Bozarth* (4th Dist. 1968), 101 Ill. App. 2d 99, 102, 242 N.E.2d 54.) As we have stated, the protection afforded landowners who feel, that through such condemnations, their remaining land is damaged lies in their right to crosspetition for any damages to that remainder. The other statutory arguments raised by the defendants in seeking to require a fee simple acquisition are similarly without merit.

■■ ■ We turn now to several arguments raised by the defendants in which they attempt to sustain the decision of the trial court on the basis of defects in the petition. They argue (1) that the description in the petition to condemn is ambiguous and obscure and that any judgment based thereon would be void and (2) that the petitioner has failed to comply with the requirement that the petition contain the names of all persons interested in the property, if known. Certainly, responsibility for accurate description of the rights to be taken rests with the petitioner (*Department of Public Works & Buildings v. Finks* (1956), 10 Ill. 2d 20, 25, 139 N.E.2d 242), but in the instant case that responsibility has been met. The petition states that the petitioner seeks to acquire fee simple title in certain described real estate. There follows a legal description of four tracts of land, including the exception of the coal and mineral rights underlying

Tract No. 3. Also specifically excepted from condemnation are the rights to mine and remove the coal and minerals underlying Tract No. 3. Thus, it is clear that the petitioner wants the surface rights and mineral rights to Tracts 1, 2 and 4 but only the surface rights to Tract 3. Owners of the mineral rights underlying Tract No. 3 will also have the right to reasonable access from the surface in order to enjoy the mineral estate. (*Pickens v. Adams* (1955), 7 Ill. 2d 283, 291, 131 N.E.2d 38; *Jilek v. Chicago, Wilmington & Franklin Coal Co.* (1943), 382 Ill. 241, 47 N.E.2d 96.) This is so because, when the mineral estate is severed from the surface estate, the law implies that the means of obtaining or enjoying the estate are also granted. (*Jilek*, at 245, 250.) This legal implication is strengthened by the express language in the petition which excepts the right to mine and remove the coal and minerals. It is also established, however, that only the bare license to enter through the surface is implied as to coal and mineral rights, and the owner of the mineral estate must extract the minerals without subsidence damage to the surface. As stated in *Jilek*, at page 251:

> "The law requires the owner of the mineral estate to extract minerals without damaging the surface, and, unless there is a specific exemption of liability, the owner of the surface can recover for damages caused by sinking or subsidence caused by mining. [Citations.]"

We conclude that the petition is clear and unambiguous with respect to what is being sought and what is being excluded.

As to the lack of allegations in the petition concerning the ownership of the excepted coal and mineral rights, the petitioner was under no obligation to include such allegations, since they were not condemning the mineral rights underlying Tract No. 3. The petition contained the names of the record owners of all of Tract No. 3 and the persons known to it who were interested in the property to be taken. It also contained a clause pertaining to the unknown owners who might be interested therein. There was, therefore, no defect in the description of the owners or of the property to be condemned. See Ill. Rev. Stat. 1977, ch. 47, par. 2.

We find it unnecessary to reach other questions sought to be raised concerning the nature (and ownership) of the surface and usage thereof of Tract No. 3. Appeal of such matters, and the issue of potential joint use, must await a final decree in this proceeding, when we shall have the benefit of a full factual presentation and the trial court's findings.

The issue of what damages, if any, are to be paid and of the disposition of the rights and interests of Garrow by reason of a lease relating to gravel on such tract, and, of the rights and interests therein of other parties hereto, is remitted for further determination by the trial court upon remandment of this cause.

156

Our answer to the question certified is in the affirmative. The petitioner does have the authority to condemn less than the entire interests of the defendants in Tract No. 3. Accordingly, we reverse the decision of the trial court on the defendants' second motion to dismiss and traverse and remand for trial, with directions to allow filing of a crosspetition for damages by defendants and an amendment by petitioner, if desired by those parties.

Reversed and remanded with directions.

BARRY, P. J., and SCOTT, J., concur.