448 P.2d 901

STATE ROAD COMMISSION, Plaintiff and Appellant,

v.

UTAH SUGAR COMPANY, dba Utah-Idaho Sugar Company, et al., Defendants and Respondents.

No. 11054.

Supreme Court of Utah.

Dec. 11, 1968.

---

Phil L. Hansen, Atty. Gen., Carl J. Nemelka, Special Asst. Atty. Gen., Salt Lake City, for plaintiff-appellant.

Walter G. Mann, Brigham City, for defendants-respondents.

HENRIOD, Justice:

The only matter on appeal here is whether the company is entitled to *severance* damages in the estimated annual amount of about $400 which would be required for extra mileage and wages of inspectors or canal riders, because they could no longer cross the highway, in the face of traffic and at right angle to the new freeway that was designed to handle a high speed and greatly increased flow of traffic going in both directions. The $400 estimated annual expense of a million dollar company, for maintenance of canal riders was reflected in testimony, and a lump sum amount of $3,500 was awarded which the court sustained as *severance* damages.

The following reasons are given in support of reversal:

I. The cost of inspecting the canals did not have anything to do with compensability as *severance* damage in the legal sense of that term.

In Nichols on Eminent Domain,[1] succinctly and emphatically, the rule in cases like this, is stated as follows: "Inconvenience of travel occasioned by being required to follow a more circuitous route due to a completed highway improvement is not a proper subject for a damage award."

This fundamental principle is espoused in Houghs v. Mackie, 1 Mich.App. 554, 137 N.W.2d 289, wherein it was observed that: "Mere inconvenience caused by the necessity to use a more indirect route to travel in certain directions is not a deprivation of access and, hence, not compensable."

In a later Michigan case, State Highway Comm. v. Watt, 374 Mich. 300, 132 N.W.2d 113 (1965), poignantly it was opined that: damages attributable to diversion of traffic are not compensable and this court holds that whether traffic is diverted by re-routing a road or erecting a fence is immaterial.

---

1. Vol. 4, Sec. 14.1, p. 491.

It is conceded that the Sugar Company *claimed* it was denied access to the banks of its canal system. This is not so, and the facts belie such a contention: The riders by traveling less than six miles, had an easy and much safer access to the banks of the canals by means of an overpass above the heavily-traveled freeway. It had access not only by this method but also at the site of the freeway, on both sides thereof and under the freeway itself,—the latter by boat, wading, if the water were not too deep, or by other means. What the Sugar Company really seems to have meant is that it did not have access to the *highway,* —not the banks, since it is obvious that it *did* have access, except for the inconvenience of traveling a more circuitous route. The authorities mentioned above are decisive as to non-compensability in this case with respect to *severance* damages.

Our own authorities clearly, or by analogy, substantiate the basic rule set out in. Nichols, supra, and the concept that to justify severance damages, the damage must be done to the *land itself,*—not to that on top of the land which is not a part of the realty, or what is done on top of the land, such as patrolling canals, as is the case here.

In Utah Road Comm. v. Hansen,[2] in a case where it was urged that the state, in condemning part of a property housing

about 180 old automobile wrecks, should pay for the expense of their removal from a part of the tract not condemned as severance damages, Mr. Justice Crockett in rejecting such urgence, had this to say:

It will be noted that our statute providing for the taking of property by eminent domain and the awarding of damages therefor upon which this action rests speaks in terms of real property and the damages to be awarded for its taking, but contains no express wording construable as allowing recovery for the cost of removing or disposing of personal property from the premises condemned. The question of its disposition has been before the courts many times and the majority view seems to be that, inasmuch as the condemnor takes only the realty, and acquires no interest in the personalty, it is the responsibility of the condemnee as owner to take care of his personal property if he desires to preserve it; and that consequently the expenses in connection with its removal or sale are not proper to be considered as a separate element of damages to be charged against the condemnor for the taking of real property.

In State By and Through Road Commission v. Papanikolas,[3] Mr. Justice Ellett cited and approved the opinion in State Road. Comm. v. Hansen, supra, in which we all

2.  14 Utah 2d 305, 383 P.2d 917 (1963).

3.  19 Utah 2d 153, 427 P.2d 749 (1967).

concurred, as we did in Justice Ellett's opinion in State By and Through Road Commission v. Papanikolas. The latter case had to do with compensability of *fixtures* as an adjunct of *severance* damages. We said they were, and by inverse logic, and of necessity, we said personal property was not compensable.

Keeping the above authorities in mind, it seems inescapable to conclude other than that the 1) inconvenience of travel to and from the banks of the canals, by a more circuitous route, coupled with the uncontroverted fact that access was available, though more difficult, and 2) that it is well settled by our own cases that inconvenience and expense with respect to personalty are not compensable,—the canal riders' efforts should not be a compensable item of expense, carved out of the principles mentioned above, for premium treatment.

■ II. There is an even stronger reason that those observed in I above, to deny an award of *severance* damages for the expense of canal riders under the facts of this case.

This project obviously was planned to supplant a comparatively slow-speed, limited-lane highway with a high-speed, multi-lane freeway designed to accommodate a much greater and increasingly heavy traffic flow, with a purpose to achieve greater safety and less hazard for motorists. It,

was designed to eliminate exactly what the canal riders theretofore had been wont to do,—drive at right angles *across* the highway,—not to travel *with* a two-way flow of traffic.

Under such circumstances, it cannot be gainsaid that the exercise of the police power is a *must* adjunct to such a project, although in the community interest, one or more citizens may suffer some pecuniary loss. Such loss is justified and paid for by the implied consent of citizens reasonably to sacrifice some interests for the common benefit of all. Without any exception of which I know, this court, and the authorities generally, have stood fast against any excepted resiliency of this firmly-rooted American interdiction.

In Springville Banking Co. v. Burton,[4] we said: "In this area of the freeway, citizens must yield to the common weal, albeit injury to their property may result."

In Utah Road Comm. v. Hansen, supra, we said:

Because of the ever-increasing volume of traffic it is essential that modern highways be designed to accommodate large numbers of motor vehicles at relatively high speeds. The desirable objective and the compelling necessity are to obtain the greatest possible efficiency combined with the highest possible degree of safety in the movement of traf-

4. 10 Utah 2d 100, 349 P.2d 157 (1960).

fic. This objective would be thwarted completely if vehicles were allowed to enter the highway practically at random, as would be the case if every abutting owner could insist on direct access. This is made clear by visualizing what would happen as tracts are divided into smaller and smaller parcels. Arising out of the necessity to properly discharge its duty of providing public highways, it is recognized that the sovereign may, under its police power to conserve the health and welfare of the people, prescribed reasonable limitations upon access to the highways.

The police power concept thus expressed, was reiterated in Hampton v. State, etc.,[5] which cited with approval language found in the case of State ex rel. State Highway Comm. v. Meier,[6] which in part said:

> * * * The right [to access] does not include the right to travel in any particular direction from one's property or upon any particular part of the public highway right-of-way because, after one is upon the highway he has the same right as all other travelers and the right of travel is a public right and controlled by the police power of the State. Nor does the right of ingress or egress to or from one's property include any right in and to existing public traffic on the highway, or any right to have such traffic pass by one's abutting property. The reason

is that all traffic on public highways is controlled by the police power of the State, and what the police power may give an abutting property owner in the way of traffic on the highway it may take away, and by any such diversion of traffic the State and any of its agencies are not liable for any decrease of property values by reason of such diversion of traffic, because such damages are "damnum absque injuria," or damage without legal injury. * * *

In State Highway Comm. v. Watt, supra, the same idea is expressed:

> The construction of a fence along and parallel to an expressway for the purpose of limiting access to said expressway is a valid exercise of police power provided the fence does not eliminate indirect access and is not erected on private property.

There are many other authorities anent the police power with respect to cases like the one here, but there seems to be no useful purpose by indulging such luxury.

III. Assuming, arguendo, that the $3,500 expense for canal riders was a legitimate item of severance damages, it is inconceivable to this writer that a willing buyer and a willing seller would quibble over such minutiae in the purchase and sale of a million dollar facility. It is somewhat akin to saying that a willing buyer would

5. 21 Utah.2d 342, 445 P.2d 708 (1968).

6. Mo., 388 S.W.2d 855 (1965).

not buy this million dollar establishment unless the seller threw in a 1968, stripped down, Chevrolet sports car. The contention that such a minuscule item would hold up the sale is a figment of the imagination.

CALLISTER and TUCKETT, JJ., concur.

ELLETT, J., concurs in the result.

CROCKETT, Chief Justice (Dissenting).

As a predicate to my treatment of the problem here involved, it seems desirable to further set out these essential facts: It was in connection with the construction of the new Interstate Freeway I-80 as it proceeds northwesterly near Tremonton that the plaintiff Road Commission condemned rights-of-way to pass over three canals, the Bothwell, the Corinne, and the Central, owned and operated by the defendant Utah-Idaho Sugar Company. For 3.8 acres of land actually taken the jury awarded defendant the sum of $3,088. This is well within the evidence and no complaint is made thereof. This is also true of $1,050 necessary for construction costs of changing flumes and headgates. This leaves in controversy the amount of $3,500, which, as stated in the main opinion, was awarded as severance damages because the road construction makes it more difficult for the defendant company to maintain and operate its canals.

The company maintains alongside each canal on its own property a travel way (a dirt road) for its employees in performing their various duties such as checking headgates and diversions, spraying and controlling weeds, removing accumulations of debris and other such work in connection with maintaining and keeping the canals in proper operation, which includes an inspection daily by a canal rider. The difficulties created in the use of the defendant's remaining property result because the new Freeway I-80 is a non-access highway, fully enclosed by chain-link fencing, so that no one can cross over. Thus the plaintiff's canal riders and other workmen can follow along the canal up to where the highway crosses it, then must go back until they come to a public road, follow it to an overpass, go to a public road on the other side, and return to the canal on the opposite side of the freeway where they had just left. This necessitates extra travel of just under six miles (5.8 miles) in connection with the three crossings of defendant's canals. This is the difficulty which the condemnation has created in the use of defendant's remaining property and for which the jury awarded $3,500 severance damage which is challenged on this appeal.

I have no disagreement with the doctrine stated, nor the authorities cited in support thereof, that the inconvenience of non-access to the highway is not a proper basis for assessing damages, *where there is no*

*taking.*[1] But an examination of the authorities shows that where there is a taking, the situation is entirely different. Where part of one's property is taken, the right to recover damages to the remaining property, including damages resulting from the construction made by the condemnor, is clearly and unequivocally set forth in our statutes.

Sec. 78-34-10 (2), U.C.A.1953, states:

(2) If the property sought to be condemned constitutes only a part of a larger parcel, the damages *which will accrue to the portion not sought to be condemned by reason of its severance* from the portion sought to be condemned *and the construction of the improvement in the manner proposed by the plaintiff.*

This statute is in accord with the general decisional law which affirms that in assessing severance damages to the remaining property, consideration may be given to anything resulting from the taking, or the construction of the improvement which would impair the use and tend to reduce the value of the remaining property.[2] I am quite unable to understand how, under traditional rules of review, this court can properly rule that the trial court and jury were wrong in finding that the use of defendant's remaining property was impaired to a substantial degree, which they appraised at the $3,500 figure.

Inasmuch as this is a dissenting opinion, I think it inadvisable to treat in extenso the question of the qualifications of the

1. See authorities cited in the main opinion, and particularly Springville Banking Co. v. Burton, footnote 4, main opinion; State by State Road Comm. v. Rozelle (1941), 101 Utah 464, 120 P.2d 276; Weber Basin Conservancy District v. Hislop, et al., 12 Utah 2d 64, 362 P.2d 580; Robinett v. Price, 74 Utah 512, 280 P. 736.

2. See statement in State by State Road Comm'n v. District Court Fourth Judicial District, 94 Utah 384, 78 P.2d 502; cf. also Southern Pacific Co. v. Arthur, 10 Utah 2d 306, 352 P.2d 693; and State v. Ward, 112 Utah 452, 189 P.2d 113; see Long v. Shirley, 177 Va. 401, 14 S.E. 2d 375, a case comparable in principle, where a barn and water source were severed from grazing land and severance damage resulting from construction of highway was allowed for "inconvenience in the future operation of the farm." See 2 Nichols on Eminent Domain, § 6.45, titled "Damage to remainder area distinguished from damage to parcel no part of which is taken":

"Whenever an owner of property damaged *by the construction of some public improvement* is entitled to compensation by the constitution or statutes of the state, the measure of his compensation is the same as in the case of a partial taking, namely, the decrease in the market value of his land.

\* \* \* \* \*

"There is a distinction, however, to be noted between the assessment of compensation in the case of a taking and in the case of damage when no land is taken. In the former case the mere fact that there has been a taking entitles the owner to recover for all damages to his remaining land, whether special or shared by the public generally, provided they flow from the taking, since he is constitutionally entitled to be made whole for all injuries resulting from the taking of his land; \* \* \*."

## 84

expert witnesses and their valuation of the severance damages. It is sufficient for my purpose to state that two such expert witnesses qualified to the satisfaction of the trial court. The testimony spelled out in considerable detail the extra travel required, and on the basis of hours and wages, that this would amount to around $350 to $400 a year, which, capitalized at reasonable rates of interest, would compute to an evaluation ranging up to about $8,000; and this was estimated as *the damage to the company* for difficulty imposed upon the use and operation *of its remaining property*.

It is uniformly held the questions as to the qualification of an expert and the competence of his testimony are for the trial court. When that requirement is satisfied, whatever frailties or deficiencies may exist are things which should be evident to the jury, and which go to the weight they will give the testimony rather than to its admissibility.[3]

That the jury verdict and judgment should not be overturned on the point under discussion finds solid support in instructions given to the jury, in harmony with those requested by the State. The court clearly and accurately told the jury that they should determine the value of the land taken and " * * * the damage, if any you find, which will accrue to the portion not sought to be condemned by reason of its severance from the portion condemned," and that " * * * you are not to take into consideration imaginative or speculative values or damages, or such remote or inappreciable damages as the imagination may conjure up, and which may or may not arise at all in the future, but only such values and damages that are real and substantial." This is in accord with the correct test as to future damages: whether it is shown with reasonable certainty that the loss will be suffered. If so, it is compensable.[4]

Finally, it is noteworthy that the jury's award of $3,500 was in the neighborhood of one half of the appraisals given by the defendant's experts. As I survey the over-all picture, and in view of the jury's prerogative to assess the damages, it is my opinion that the State Road Commission has no justifiable complaint about the amount of the verdict. I would affirm the judgment. (All emphasis added.)

3. See Allen v. First National Bank of Atlanta, 5 Cir., 1948, 169 F.2d 221, 224; State v. Pingree, 106 Utah 329, 148 P. 2d 336 (1944); State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988 (1960).

4. Cf. Robinson v. Hreinson, 17 Utah 2d 261, 409 P.2d 121, and authorities cited therein.