[¶ 50] ZINTER, Justice
(concurring specially).
[¶ 51.] I join the majority opinion on Issue Four in its entirety. I write only to emphasize that today’s Court correctly overrules Schuler. See supra ¶ 45. Schu-ler’s measure of damages was based on a unique but now-repealed statute, and Schuler is not in accord with the almost unanimous view of courts today.
[¶ 52.] Miller and Walsh argue that under Schuler, they should be compensated for loss resulting from the Intersection’s closure—even if the closure did not substantially impair their access—because the State coincidentally appropriated a small tract of unrelated land. In Schuler, the State condemned a two-acre strip of land on the western border of Schuler’s property in order to build a new public highway. A number of the buildings on Schuler’s property were situated on the property’s eastern border, where the property abutted an existing public road. The jury awarded Schuler the value of the two acres taken on the western border ($20) and ten times that amount for “the damage to the sale of land” resulting from “diversion of [traffic]” ($200).[7] Id. at 464, 81 N.W. at *158 891-92. In affirming, the Court held that “[w]hile the damages for the diversion of [traffic] itself might not be recoverable in this action, the diversion of [traffic], together with all the other facts and circumstances proven on the trial connected with that diversion, might lessen the value of the property to the amount specified[.]” Id. at 465, 81 N.W. at 892. Thus, although the Court recognized that the loss resulting from diversion of traffic was not directly compensable under Article VI, § 13, it nevertheless upheld a jury verdict that included such loss in the posttaking market value of the remaining property.
[¶ 53.] Miller and Walsh’s reliance on Schuler is misplaced because the measure of compensation approved in Schuler was based on an inapplicable, unique, statutory measure of damages that was subsequently repealed. At the time Schuler was decided, the Compiled Laws of the Territory of Dakota were largely still in effect.[8] Under the Compiled Laws, Political Code § 1302 entitled a landowner to compensation from a township for any “damages sustained by reason of laying out, altering or discontinuing any road” on land belonging to the landowner. (Emphasis added.) Such damages included “the advantages and benefits the new road or alteration of an old one will confer on the claimant for the same, as well as the disadvantages.” Id. (emphasis added).
[¶ 54.] Although the Court did not explicitly cite §. 1302 in Schuler, § 1302 was central to that decision. By its express terms, § 1302 applied “in all cases of assessing damages” for the laying out of any road. (Emphasis added.) In her brief to the Court, Schuler quoted § 1302 and argued that it governed the case in conjunction with Article VI.[9] Consistent with the statutory requirement and Schuler’s argument, the Court used the language of § 1302 to justify the jury verdict: “[B]y the expression ‘damages by diversion of travelf,]’ the jury clearly intended to convey the idea that by the laying out of the new road, and making that the highway for general travel, the plaintiffs would be damaged in the amount stated.” Schuler, 12 S.D. at 465, 81 N.W. at 892 (emphasis added).
[¶ 55.] Significantly, the Court quoted—and primarily relied on—§ 1302 again in Schuler’s companion case Bockoven v. Board of Supervisors of Lincoln Town *159 ship, 13 S.D. 317, 83 N.W. 335 (1900). Bockoven and Schuler involved neighboring properties on the same highway-construction project.[10] In determining the appropriate measure of compensation due, the Court explained: “Section 1302 of the Compiled Laws require[d] a just award of damages ..., and in making such adjustment the advantages and benefits that the new road will confer ..., as well as the disadvantages that he will sustain, must be taken into consideration.” Bockoven, 13 S.D. at 323, 83 N.W. at 337 (emphasis added).[11] The Court cited Schuler in the ensuing discussion regarding the appropriate measure of compensation under § 1302 and invoked Article VI only to reject the circuit court’s instruction to the jury that the landowner could not be compensated for possible “injury from the back flow of water from the grade established[.]” Bockoven, 13 S.D. at 323-28, 83 N.W. at 337-38.
[¶ 56.] Considering § 1302’s requirement that it apply “in all cases of assessing damages[,]” Schuler’s reliance on § 1302 in her argument to the Court, the Court’s use of § 1302’s language in the Schuler decision, and the Court’s explicit citation to § 1302 under the identical facts of Bockoven, there can be no doubt that the measure of compensation approved in both Schuler and Bockoven was based primarily on § 1302. However, § 1302 (allowing damages for any “disadvantages” caused by the new road) did not survive the 1919 revision of South Dakota’s codified laws. Current South Dakota law— unlike § 1302—does not permit compensation for every disadvantage suffered by a landowner. In particular, while the diversion of traffic or mere circuity of travel are no doubt disadvantageous, they are nevertheless noncompensable under Article VT, § 13. This is the law in almost all jurisdictions. Even in the case of a partial taking, virtually all courts exclude evidence of loss resulting from the diversion of traffic or mere circuity of travel (i.e., an increase in circuity not amounting to a substantial impairment of access) in calculating just compensation.[12] So while Schu- *160 ler and Bockoven were correctly decided under a statutory remedy available at the time, those cases (and the cases that rely on Schuler) may no longer be relied on in determining the measure of compensation appropriate under Article VI, § 18. As explained in the majority opinion, Miller and Walsh are not entitled to compensation for loss resulting from the Intersection’s closure unless the closure substantially impaired access to their property. See supra ¶ 46-47.

. In Schuler, the Court used the phrase diversion of travel instead of diversion of traffic. Although the phrase diversion of travel was in use at the time Schuler was decided, the *158 continued use of that phrase is a conflation of the modern phrases diversion of traffic and circuity of travel. See supra ¶ 43 n. 3 (discussing the difference between these two phrases). Because Schuler's existing access was not changed in any way—if anything, access to her property was enhanced by the construction of an additional abutting highway—Schu-ler cannot be read as a circuity-of-travel case. Therefore, the modern phrase diversion of traffic is appropriate here.

. After South Dakota became a state in 1889, the Legislature adopted the Compiled Laws of the Territory of Dakota to the extent that such laws were "not repugnant to or inconsistent with” South Dakota’s newly adopted constitution. 1890 S.D. Sess. Laws ch. 105, § 1. South Dakota's first comprehensive state code was not published until 1903.

. Schuler asserted:
We will proceed to answer appellant’s objections in the order in which they are made, first calling the court’s attention to our constitution and statutes governing this case.
Our constitution, Bill of Rights, section 13, provides: "Private property shall not be taken for public use or damaged without just compensation.”
Section 1302, Compiled Laws, says: "The supervisors, in all cases of assessing damages, shall estimate the advantages and benefits the new road or alteration of an old one will confer on the claimant for the same, as well as the disadvantages.”
And the same rule governs the jury in its determination. (Compiled Laws, section 1327).

. A review of the Schuler abstract of record reveals that Bockoven actually testified as a witness on Schuler's behalf in her appeal before the circuit court. During his testimony, he also referred to his own pending appeal.

. As noted above, § 1302 explicitly entitled a landowner to compensation for any disadvantage sustained by the laying out of a road on land taken from the landowner. See supra ¶ 53.

. See Triangle, Inc. v. State, 632 P.2d 965, 968 (Alaska 1981); State ex rel. Sullivan v. Carrow, 57 Ariz. 434, 114 P.2d 896, 898 (1941); Hempstead Cty. v. Huddleston, 182 Ark. 276, 31 S.W.2d 300, 301 (1930); People ex rel. Dep’t of Pub. Works v. Russell, 48 Cal.2d 189, 309 P.2d 10, 15-16 (1957) (en banc); 489.137 Square Feet of Land v. State ex rel. Price, 259 A.2d 378, 380 (Del.1969); Div. of Admin., State Dep’t of Transp. v. Capital Plaza, Inc., 397 So.2d 682, 683-84 (Fla.1981); Cobb Cty. v. Princeton Assocs., 205 Ga.App. 72, 421 S.E.2d 102, 103 (1992); State, Idaho Transp. Bd. v. HI Boise, LLC, 153 Idaho 334, 282 P.3d 595, 600 (2012); Winnebago Cty. v. Rico Corp., 11 Ill.App.3d 882, 296 N.E.2d 867, 870-71 (1973); State v. Ensley, 240 Ind. 472, 164 N.E.2d 342, 345-47 (1960); Nelson v. Iowa State Hwy. Comm’n, 253 Iowa 1248, 115 N.W.2d 695, 696-97 (1962); Hudson v. City of Shawnee, 246 Kan. 395, 790 P.2d 933, 936, 940-41 (1990); Commonwealth, Dep’t of Hwys. v. Dowdy, 388 S.W.2d 593, 595 (Ky.965); State ex rel. Dep’t of Hwys. v. Hoyt, 272 So.2d 768, 773 (La.Ct.App.1972); LaCroix v. Commonwealth, 348 Mass. 652, 205 N.E.2d 228, 231-32 (1965); Jacobson v. State ex rel. State Hwy. Comm’n, 244 A.2d 419, 421-22 (Me.1968); In re Mich. State Hwy. Ctrl. No. 82195-D(1), 377 Mich. 309, 140 N.W.2d 500, 503 (1966); Cty. of Anoka v. Blaine Bldg. Corp., 566 N.W.2d 331, 334 (Minn.1997); Muse v. Miss. State Hwy. Comm’n, 233 Miss. 694, 103 So.2d 839, 848 (1958); State ex rel. State Hwy. Comm’n v. Meier, 388 S.W.2d 855, 857 (Mo.1965) (en banc); State v. Hoblitt, 87 *160 Mont. 403, 288 P. 181, 184 (1930); Painter v. State Dep’t of Rds., 177 Neb. 905, 131 N.W.2d 587, 590-91 (1964); State v. Shanahan, 118 N.H. 525, 389 A.2d 937, 939 (1978); State ex rel. Comm’r of Transp. v. Monmouth Hills, Inc., 110 N.J.Super. 449, 266 A.2d 133, 136-37 (1970), cited with approval in State ex rel. Comm’r of Transp. v. Weiswasser, 149 N.J. 320, 693 A.2d 864, 874 (1997); Bd. of Cty. Comm'rs v. Slaughter, 49 N.M. 141, 158 P.2d 859, 863-64 (1945); McHale v. State, 278 A.D. 886, 104 N.Y.S.2d 981, 982 (1951) (per curiam), aff'd, 304 N.Y. 674, 107 N.E.2d 593, 594 (1952); Bd. of Transp. v. Terminal Warehouse Corp., 300 N.C. 700, 268 S.E.2d 180, 182-83 (1980); Richley v. Jones, 38 Ohio St.2d 64, 310 N.E.2d 236, 240 (1974); Wolf v. Commonwealth, Dep’t of Hwys., 422 Pa. 34, 220 A.2d 868, 871-72 (1966); Narciso v. State, 114 R.I. 53, 328 A.2d 107, 111-12 (1974); State ex rel. Dep’t of Transp. v. Henrikson, 1996 S.D. 62, ¶21, 548 N.W.2d 806, 811; City of Memphis v. Hood, 208 Tenn. 319, 345 S.W.2d 887, 890-91 (1961); State v. Schmidt, 867 S.W.2d 769, 770 (Tex.1993); State Rd. Comm’n v. Utah Sugar Co., 22 Utah 2d 77, 448 P.2d 901, 902-03 (1968); State Hwy. Comm’r v. Howard, 213 Va. 731, 195 S.E.2d 880, 880 (1973) (per curiam); Ehrhart v. Agency of Transp., 180 Vt. 125, 904 A.2d 1200, 1205-06 (2006); State v. Fox, 53 Wash.2d 216, 332 P.2d 943, 946 (1958); State Hwy. Comm’n v. Scrivner, 641 P.2d 735, 738-39 (Wyo.1982); cf. State Dep’t of Hwys., Div. of Hwys. v. Davis, 626 P.2d 661, 666-67 (Colo.1981) (en banc) (holding landowner’s loss resulting from advertising restrictions on landowner's property noncompensable as an element of severance damages). But see Pike Cty. v, Whittington, 263 Ala. 47, 81 So.2d 288, 290-92 (1955); S.C. State Hwy. Dep’t v. Wilson, 254 S.C. 360, 175 S.E.2d 391, 395 (1970).