Belknap,
May 7, 1929.

TILTON *v.* DAVID P. SHARPE.

*Thomas P. Cheney* (by brief and orally), for the plaintiff.

*Robert W. Upton* and *Winthrop Wadleigh* (*Mr. Upton* orally), for the defendant.

MARBLE, J. The defendant is a lessee of land at the corner of Main and School streets in Tilton, on which he has erected a drive-in filling station. Since by virtue of his lease he succeeds to the rights of his lessor, he is treated herein for convenience as though he were the owner of the land. Both streets are public highways, but the traffic on Main street, which is a part of the Daniel Webster highway, is much heavier than that on School street. The filling station is located in the center of the business section of the town. On the northerly side of Main street and included within the highway there is a sidewalk, the northerly edge of which, adjoining the defendant's premises, is on the same level with the abutting land, but upon the southerly side there is a curbstone several inches in height which impedes the passage of automobiles to and from the street.

After obtaining his lease, the defendant applied informally to the selectmen for leave to remove a portion of the curb and to construct a driveway across the sidewalk at that point. Only west-bound traffic is permitted by local regulations to pass along that section of Main street to which the defendant demands access. It is his purpose to have his patrons enter from School street and go out over the proposed driveway. The selectmen, deeming it feasible for him to have the exit as well as the entrance on School street, and believing that the use by his patrons of the desired driveway would be unduly dangerous to pedestrians, denied the application. The defendant then began to remove the curb without permission, when the present proceedings were instituted.

The trial judge found as a fact that "passways from defendant's premises to Main and School Streets can be used by motor vehicles without unusual hazard or danger if travellers on the streets and sidewalks and the operators of vehicles entering or leaving defendant's premises exercise reasonable care; . . . but the use of such passways in the manner proposed would be accompanied with much danger of accident in the absence of such care by either." He ruled that "the defendant is entitled to such means of access to and from the premises as are necessary to enable him to use them to the best advantage for the business he proposes to conduct," and found that "for that purpose, an entrance to Main street suitable for a passage of automobiles is necessary." He further ruled that the defendant had no right "to tear up the sidewalk for the purpose of constructing a passway,"

that the sidewalk was not an obstruction within the meaning of P. L., c. 80, s. 28, and that the defendant had an adequate remedy under the provisions of chapters 49, 74, and 75 of the Public Laws "to secure such alterations in the highway as are proper and necessary for his purposes."

The provisions to which the court has reference establish the formal procedure to be followed in "the laying out or altering of highways." Counsel for the defendant suggest that there is a marked distinction between the alteration of a highway and an alteration in a highway; that the former implies a change of location, "while the latter means a change within the existing highway without changing its location." We agree that it is improbable that notice and public hearing could have been contemplated in the case of a slight surface alteration such as the defendant demands. See *Waldron* v. *Berry*, 51 N. H. 136, 143.

But the interpretation of these statutes is of minor importance, since the defendant's primary desire is not to alter the sidewalk but to cross it, and the plaintiff admits that the passage of motor vehicles from the filling station directly into Main street would be opposed even if the sidewalk were so constructed that it could be crossed without alteration. It is to this broader aspect of the case that the oral arguments have been chiefly directed.

The sidewalk has existed in its present form for more than twenty years. But there is no suggestion that the town has ever condemned the landowner's right of access or asserted any claim adverse thereto. Even in the present instance, so far as the findings indicate, there is no denial of the defendant's right but rather an attempt, in the interests of public safety, to prevent the unreasonable exercise of that right.

"The abutting property owner may make any reasonable use of the street which will not interfere with the enjoyment of the use of it by the public and as the public interest increases his rights may grow less. . . .

"The most important right of the abutter incident to his ownership of property abutting on a street . . . is his right of access, i. e., his right of ingress and egress. . . . It includes not merely the right of the abutting owner to go into and come out of his premises but also the right to have the premises accessible to patrons, clients, and customers. . . .

"An abutting owner, subject to municipal regulation, has the right to construct a driveway from his property to the traveled portion of the highway, provided of course he does not unreasonably interfere

with the public use of the street." 4 McQuillin, Mun. Corp. (2d. *ed.*), ss. 1425, 1429, *pp*. 83, 92, 94.

The right of access, though a private right, may of course be limited by public regulation, but it cannot be totally destroyed or greatly impaired without due process of law. *Cram* v. *Laconia*, 71 N. H. 41, 47, 52.

In the present case the town has promulgated no regulations respecting traffic across the sidewalks or access to and from land abutting Main street. Nor does it appear that there is any ordinance relating to garages or filling stations. Restrictive action by the selectmen in individual cases cannot be justified as an exercise of the power to regulate the use of highways contained in P. L., *c*. 47, *s*. 15. Consequently the question presented is merely that of reasonable use. As the findings are understood, there has been no definite determination of this question. The case is therefore remanded to the superior court for the appropriate finding or for such further hearing on that issue as justice may require.

"The right of an owner of land abutting on public highways has been a fruitful source of litigation in the courts of all the States, and the decisions have been conflicting, and often in the same State irreconcilable in principle. The courts have modified or overruled their own decisions, and each State has in the end fixed and limited, by legislation or judicial decision, the rights of abutting owners in accordance with its own view of the law and public policy." *Sauer* v. *New York*, 206 U. S. 536, 548.

In *Haley* v. *Colcord*, 59 N. H. 7, 8, Chief Justice *Doe* declares: "The doctrines of reasonable necessity, reasonable care, and reasonable use prevail in this state in a liberal form, on a broad basis of general principle." See also *Page* v. *Brooks*, 79 N. H. 70; *True* v. *McAlpine*, 81 N. H. 314, and cases cited.

"The owner of land may put it to any use which is reasonable, considering his interest and that of the other persons affected by it." *Hamlin* v. *Blankenberg*, 73 N. H. 258. "In this state the question of reasonable conduct, whether in relation to tangible property or to intangible rights, is one of fact." *Huskie* v. *Griffin*, 75 N. H. 345, 351.

True, there is support for the defendant's position that he has an absolute and unrestrictable right of access to each of the adjoining streets. *Brownlow* v. *O'Donoghue*, 276 Fed. Rep. 636. But filling stations are very generally subject to license and control; the evidence has not been transferred, and we are not prepared to state as a matter of law that the manner in which the defendant proposes to

operate his station does not present features of unreasonableness which warrant restraint. In *State* v. *Scott*, 82 N. H. 278, 280, 281, it is held inferentially that an abutting landowner's right of access to the street for the purpose of delivering gasoline through a movable gas arm may be denied if found to constitute an unreasonable use. To uphold the plaintiff's contention is not to take the defendant's property, but to enjoin an alleged dangerous method of doing business. On the other hand, no restrictions of this nature should be imposed on the conduct of legitimate mercantile pursuits unless the public safety clearly requires them.

Two of the specific questions involved in the issue of reasonableness are whether the use which the defendant intends to make of his right of access will obstruct public travel unreasonably (*Hopkins* v. *Crombie*, 4 N. H. 520, 525; *Graves* v. *Shattuck*, 35 N. H. 257, 265; *State* v. *Kean*, 69 N. H. 122, 124) and whether it is such a use as the ordinary man would make of his premises (*Hamlin* v. *Blankenberg*, *supra; Page* v. *Brooks, supra; True* v. *McAlpine, supra*). The issue is not to be decided by a consideration of the demands of the traveling public alone. Therefore the finding that the travel upon the sidewalk opposite the defendant's premises is more congested than at any other place in the town is not decisive of the case. The greater the amount of business transacted in a given locality the greater are the dangers which the public must necessarily encounter and the greater are the landowner's needs. Likewise the finding of the court that the use of a passway from the defendant's premises to Main street will be attended with much danger of accident unless pedestrians and motorists exercise reasonable care, would not alone justify a finding that the contemplated use is unreasonable. Every driveway and every cross street involves a similar danger of accident if travelers fail to exercise due care, and only in a case where this danger is magnified by unusual elements of hazard would a denial of the right to a passway be justified. In short, no single factor, no particular right, here controls; but all aspects of the situation must be taken into account before it can be said that the defendant's proposed use of his right of access exceeds what would be reasonable under the circumstances.

Since the ultimate decision may be in the defendant's favor, we have considered his contention that he is entitled to damages caused by the continued maintenance of the curb after having notified the town that it interfered with the business he proposed to transact on the property. This is but another way of stating that he seeks to

recover the loss sustained by the issuance of the injunction. A bond or other security for the payment of such loss might have been required when the restraining order was made, but in the absence of such security, the damage claimed is not recoverable. *Rogers* v. *Clough*, 76 N. H. 272; 1 Joyce, Injunctions, s. 175, and cases cited.

The order making the temporary injunction permanent is error. But as the case has not been fully tried, it is for the superior court to determine whether the temporary injunction ought to continue in force until a final determination of the merits of the controversy.

*Case discharged.*

All concurred.