Rockingham,
No. 4721.

RAY C. WEBB & a.

v.

MAINE-NEW HAMPSHIRE INTERSTATE BRIDGE AUTHORITY.

Argued April 8, 1959.

Decided May 21, 1959.

94

*Boynton, Waldron & Dill* (*Mr. Boynton* orally), for the plaintiffs.

*Varney & Levy* and *Lawrence W. Guptill, Jr.* (*Mr. Guptill* orally), for the defendant Authority.

DUNCAN, J. The plaintiffs' major exception presents the question of whether the finding of the Trial Court that the proposed access "would present a dangerous additional hazard to the travelling public" warrants denial of "all access" between the bridge approach and the plaintiffs' land. The defendant by its answer takes the position that the rights of abutters along the approach are not controlled by the general law pertaining to the rights of abutters on other public highways in the state; and that the city of Portsmouth relinquished any rights of access appurtenant to the land, so that the plaintiffs acquired none by virtue of the city's quitclaim deed.

The New Hampshire approach to the bridge was held to be a public highway in *Interstate Bridge Authority* v. *Ham Estate*, 92 N. H. 277, 279. The court below expressly found that the approach adjacent to the plaintiffs' property is a public highway. Its status as such appears not to be questioned by the Authority, whose published booklet of rules and regulations notes that "the Bridge and approaches are public highways . . . . "

It is established law that an abutter upon a public highway has incidental rights of access to and from the highway. *Tilton* v. *Sharpe*, 84 N. H. 43, 44. While these rights are subject to regulation under the police power, they may not be taken for public purposes without compensation. *Id.*, 46; see *Anzalone* v. *Metropolitan District Commission*, 257 Mass. 32; *Iowa State Highway Commission* v. *Smith*, 248 Iowa 869, 874.

In *Interstate Bridge Authority* v. *Ham Estate, supra*, 281, this court said: "The New Hampshire approach is also a public highway . . . Abutting owners have full right to access thereto except within the toll gate limits, where they are subject to 'rules and regulations' [made by the Authority] . . . If any regulation is attempted concerning entrance upon, or use of, por-

tions of the approach west of the New Hampshire gate, it must be a reasonable one, as the court below charged."

It is plain therefore that the plaintiffs are entitled to reasonable access to the approach unless these rights were transferred to or condemned by the Authority when the premises were owned by the city of Portsmouth. No evidence was offered of any conveyance from the city to the Authority. *Cf. Wiseman* v. *Merrill,* 99 N. H. 256, 260, 261. Certain resolutions adopted by the city council and by the Authority in 1939 and 1940, received in evidence over objection and exception by the plaintiffs, indicated that the city consented to the taking of its land and to the crossing of its highways and to the raising or lowering of grades at such crossings, and that it released all claims for damages for land taken and "rights . . . granted." But the evidence falls short of establishing any release or transfer of rights of access from lands retained by the city.

The condemnation petition brought by the Authority sought to acquire title to the locus of the approach; but the record before us contains no evidence of any intent to take by eminent domain in those proceedings any rights of access to and from adjoining property.

The fence between the plaintiffs' land and the approach was established for the protection of the city's school lot at the city's request. On the evidence before us it cannot be considered to have conclusively established the city's relinquishment of rights of access from the land now owned by the plaintiffs.

We conclude therefore that the plaintiffs acquired the right of access previously owned by their grantor, the city, and that they now have such a right, subject to the power of the Authority to regulate the same to the extent permitted by law. The Authority is not exempt from a duty to have a "proper regard for an abutter's rights." *Langdon* v. *Interstate Bridge,* 92 N. H. 432, 434.

At the trial the plaintiffs placed no reliance upon the proposed combination entrance and exit mode of access which had been denied by the Authority, but relied upon the proposition that the Authority had denied them all rights of access. The proposed access which the Trial Court found to be a "dangerous additional hazard" has never been considered by the Authority, and in its brief in this court apart from claiming a relinquishment of rights of access by the city, the Authority has asserted merely that its denial, on the plaintiffs' application, of "the specific access they

requested" was proper, in the public interest, and not unreasonable or arbitrary.

The proposal for access which was advanced by the plaintiffs at the trial is not to be held unreasonable solely because "additional hazard" would be involved. As pointed out in *Tilton* v. *Sharpe*, 84 N. H. 43, 47, "the issue is not to be decided by consideration of the demands of the travelling public alone . . . The greater the amount of business transacted in a given locality the the greater are the dangers which the public must necessarily encounter and the greater are the landowner's needs." And in the same case, reported in 85 N. H. 138, 140, it was said: "Between . . . extremes a great variety of situations may arise in which the relative rights of the owner and the travelling public can be determined by no set rules or formulas, but in which the reasonableness of the proposed use must be determined by weighing its unusual dangers to the public against the inconvenience and disadvantage to the owner arising from its denial." See *Opinion of the Justices*, 99 N. H. 505, 507. Evidence which the plaintiffs sought to introduce at the trial, with respect to traffic conditions and existing hazards between the traffic circle and the toll gate was excluded subject to exception. This was error, which resulted in dismissal of the plaintiffs' petition without consideration of the issue of the over-all reasonableness of the proposed access in the light of "all aspects of the situation." *Tilton* v. *Sharpe*, 84 N. H. 43, 47.

The question of fact presented by the proposal placed before the Trial Court is one to be determined in the first instance by the Authority. RSA 258:6(3) vested in it the power to adopt "rules and regulations governing use of the bridge and any other services made available in connection with said bridge." Pursuant to this grant, the Authority adopted its "Rule 2" which provides as follows: "There shall be no entering upon or leaving the Bridge approaches in either Maine or New Hampshire to any adjoining properties except at such places as the Authority may by license grant permission, which license may at any time be revoked by the Authority when in its opinion said entrance becomes either a threat to public safety or to the proper and convenient collection of revenues by the Authority."

The plaintiffs have not questioned the validity of this rule. Its application and enforcement however must be consistent with the standard of reasonable use. The approach, unlike more

recently constructed toll roads in the vicinity, is not a limited access highway. *Cf.* RSA chs. 236, 256. See *Wiseman* v. *State,* 98 N. H. 393, 398. On the contrary it is the site of established filling stations (see *Gelinas* v. *Portsmouth,* 97 N. H. 248), and intersecting ways which afford egress from the approach before the toll gates are reached. The nature of these permitted uses of the approach must be taken into account in determining the reasonableness of any request for access. *Tilton* v. *Sharpe,* 84 N. H. 43, 47, *supra.*

The plaintiffs sought by their petition for declaratory judgment an adjudication of the existence of their right to access, an adjudication which was denied to them by dismissal of their petition. This was error. They are entitled to a judgment declaring that as owners of adjoining land they have a right of access to the bridge approach, subject to the power of the Authority in the reasonable exercise of its statutory authority to regulate, restrict, or deny the access sought by them.

The plaintiffs will thereafter be free, if they choose to do so, to apply to the Authority for approval of access in accordance with the proposal laid before the Trial Court. As before stated, it will in such a case be for the Authority to determine whether the proposed access would constitute a reasonable use, or would present unusual hazards to the traveling public outweighing the inconvenience and disadvantage to the plaintiffs from its denial.

*Exceptions sustained; remanded.*

All concurred.