Merrimack
No. 7381

CAPITOL PLUMBING & HEATING SUPPLY CO., INC.

v.

STATE OF NEW HAMPSHIRE

August 31, 1976

*Stanley, Tardif & Shapiro (Mr. R. Peter Shapiro* orally) for the plaintiff.

*David H. Souter,* attorney general, *John C. Boeckeler,* assistant attorney general, and *Roger G. Burlingame,* assistant attorney general *(Mr. Burlingame* orally), for the State.

GRIMES, J. This transfer presents the issue of the appropriate measure of damages for the taking of a landowner's loss of access rights, which are later restored by emendation to the original return of highway layout. The question of law was reserved and transferred without ruling by *Keller,* C.J.

On February 26, 1968, a special committee appointed by Governor and Council determined that there was occasion to lay out a portion of Bridge Street in Concord as a limited access facility. On February 27, 1968, a commission was established to lay out the limited access facility, acquire land, assess the damages sustained

by each owner of land taken, and tender payment of the sums awarded in damages. The return of the highway layout was filed with the secretary of state on February 25, 1970.

The original highway layout resulted in the plaintiff's loss of the right to use a certain private right of way leading to Storrs Street and in the loss of access to Bridge Street. On December 4, 1970, the commission filed with the secretary of state an emendation to the certificate of tender dated February 25, 1970, which indicated that damages of $3,500 had been awarded the plaintiff. The plaintiff refused to accept the award and appealed the assessment of damages to the superior court for trial by jury. By agreement of the parties, the matter was transferred to the eminent domain commission for hearing to determine the amount of compensation to be paid. On April 26, 1973, the eminent domain commission awarded damages of $6,000 and plaintiff appealed to the superior court for a trial de novo. The right of access was restored by emendation to the layout on June 26, 1974. The question of law presented by this transfer concerns only the measure of damages.

The owner of land abutting on a street or highway has a private right of access in that street or highway, which includes not only the right to go to and from the land but also the right to have those premises accessible to others. *Tilton v. Sharpe,* 84 N.H. 43, 45, 146 A. 159, 160 (1929); *Cram v. Laconia,* 71 N.H. 41, 51 A. 635 (1901); Annot., 43 A.L.R.2d 1072 (1955). Although this right of access may be limited by regulation, it cannot be taken without compensation. *Morton v. State,* 104 N.H. 134, 138-39, 181 A.2d 831, 834 (1962); *Webb v. Maine-N.H. Bridge Authority,* 102 N.H. 91, 94, 152 A.2d 521, 524 (1959).

It is only that property precisely designated in the appropriation papers which can lawfully be taken, and such property vests in the condemnor at the time of the filing of the declaration of taking. Roettger and Dickson, *Access Control: Improper Hybridization of Police Power in Condemnation Cases Involving Partial Takings of Land,* 6 Urban Lawyer 603, 604-05 (1974). For this reason, plaintiff argues that damages for the loss of access must be determined strictly as of the date of taking without regard to the 1974 emendation which returned the right of access to plaintiff. We hold to the contrary.

Plaintiff was legally deprived of the right of access only during the period of time from the layout on November 20, 1970, to the

emendation restoring the right of access on June 26, 1974, or a period of three-and-one-half years. Even during this time, plaintiff in fact had full access, as the State did not enforce its rights. Plaintiff suffered only a temporary loss of right and not a final appropriation of his property. 2A J. Sackman, Nichols' The Law of Eminent Domain § 6.4442[2] (3d ed. rev. 1975). The temporal extent of the taking must be taken into account in assessing the amount of compensation. Stoebuck, *The Property Right of Access Versus the Power of Eminent Domain,* 47 Texas L. Rev. 733, 762 (1969). To do otherwise in this case would result in a windfall for the plaintiff.

The usual rule of damages for a temporary taking is the fair rental value of the property for the period it was taken plus any actual damage sustained as a result of that taking. *Kimball Laundry Co. v. United States,* 338 U.S. 1 (1949); *United States v. General Motors Corp.,* 323 U.S. 373 (1945); Annot., 7 A.L.R.2d 1297 (1949). However, that rule has been applied where there has been an actual taking over of the property by the government for a period of time.

Here there has been no taking over of the property, but rather a cutting off of the right of access for a temporary period. There was in fact no actual loss of access but only of the legal right of access. We have discovered no case or comment which precisely answers the question before us, nor has any been brought to our attention. It is acknowledged by the State that the existence of the legal loss of access would be considered by prospective purchasers, and it is the plaintiff's claim that the market value of its property was reduced during that period.

Under the circumstances of this case, it appears to us that plaintiff would be fairly compensated if it received the amount by which the rental value of the property was reduced during the three-and-one-half years from November 20, 1970, to June 26, 1974. See the test employed in *Paddock v. Durham,* 110 N.H. 106, 261 A.2d 438 (1970).

*Remanded.*

All concurred.