Rockingham
No. 7407

WILLIAM TREAT & a.

v.

STATE OF NEW HAMPSHIRE

January 31, 1977

*Stanley M. Brown,* of Manchester, by brief and orally, for plaintiffs William and Virginia Treat.

*David H. Souter,* attorney general, and *Joseph A. DiClerico, Jr.,* assistant attorney general (*Mr. DiClerico* orally), for the state.

LAMPRON, J. Appeal by the plaintiff landowners to the superior court under RSA 498-A:27 (Supp. 1975) from an award by the New Hampshire Commission of Eminent Domain in the sum of $7,500 for a part of their property taken by the state and damages to their remaining property caused thereby. The state filed a motion that the Trial Court (*Douglas,* J.) rule as a matter of law in advance of trial that, based on the declaration of taking as amended, RSA 498-A:5 (Supp. 1975), and the return of layout, RSA 233:11 (Supp. 1975), the plaintiffs "have an unrestricted right of access in fee, fifty feet in width, to and from their property abutting the limited access highway facility, known as relocated Walnut Avenue [in North Hampton], subject only to the provisions of RSA 249:17, the driveway permit law."

The court denied the state's motion: "Because the access cannot fairly be said to be 'unrestricted'" and transferred defendant's exception. This ruling was based on the discretion granted to the commissioner of public works and highways over limited access highways by RSA 236:3 to "regulate, restrict or prohibit access [from time to time] as to best serve the traffic for which such facility is intended."

In 1971 the state decided to reconstruct Walnut Avenue into a limited access highway under the provisions of RSA ch. 236. At that time the plaintiffs owned approximately 100 acres of unimproved land with approximately 73 feet of frontage on Walnut Avenue which provided the principal means of access to the property. In 1972 the state by eminent domain acquired title in fee to

.17 acres abutting Walnut Avenue, which was all of plaintiff's frontage thereon. However, the state excepted from the taking a point of access fifty feet in width on the northerly side of reconstructed Walnut Avenue which provides access to plaintiffs' property.

On June 13, 1974, the planning board of North Hampton denied plaintiffs' application for a permit to subdivide their remaining land. The reason given for the denial was that the plaintiffs did not own access in fee which they could dedicate to the town for a public highway as required by the planning board. Plaintiffs did not appeal the board's decision. RSA 36:34 (Supp. 1975).

Plaintiffs admit that the state has not totally deprived them of access to their land. They maintain, however, that "the State has so *limited* access as to make the remaining access unacceptable to local authorities as the entrance to a subdivision in which others might invest substantial sums for residences," which is the highest and best use of their remaining land.

As abutters on a limited access highway, plaintiffs' right of access is subject to "such terms and conditions as may be specified by the commissioner of public works and highways from time to time." RSA 236:3. Furthermore RSA 249:17 I (Supp. 1975) provides that "[i]t shall be unlawful to construct, or alter in any way that substantially affects the size or grade of any driveway, entrance, exit, or approach within the limits of the right of way of any class I or class III highway . . . that does not conform to the terms and specifications of a written permit issued by the commissioner of public works and highways." It is to be noted that plaintiffs' land abutting on such a highway was subject to this section previous to the conversion of Walnut Avenue to a limited access highway. Plaintiffs maintain that these provisions restrict their rights of access to such an extent that the trial court properly denied the state's motion for a ruling that they had an unrestricted right of access in fee, fifty feet in width to and from their property abutting the limited access facility, known as relocated Walnut Avenue.

The state admits that the plaintiffs are entitled in these eminent domain proceedings to the value of the 23 feet of their original 73 feet of frontage on Walnut Avenue which has been acquired by the state in fee by eminent domain. The state further concedes that the plaintiffs are also entitled to recover damages which this taking

has caused to the remainder of plaintiff's property. However, it maintains that such severance damage "should be limited to the damages, if any, which may have resulted from restricting access to one point fifty feet in width and should not include any claim that their entire access rights have been acquired by the State."

The state properly maintains that the present interests of the respective parties in the original 73 feet of frontage which constituted plaintiffs' right of access to Walnut Avenue are to be determined by the jurisdictional documents, that is, the declarations of taking filed pursuant to RSA 498-A:5 (Supp. 1975) and the return of layout filed pursuant to RSA 233:11 (Supp. 1975). These documents recite that the state has taken all rights of access belonging to the plaintiffs "with the exception of one (1) point of access, fifty (50') feet in width [at the right of way line] on the Northerly side of reconstructed Walnut Avenue." Such a method of conveyancing is generally used in eminent domain proceedings involving limited access facilities. R. Netherton, Control of Highway Access 231 (1963); *see Nasco, Inc. v. Director of Public Works,* 360 A.2d 871, 876–77 (R.I. 1976).

██ Since the jurisdictional documents have imposed no conditions on the excepted 50-foot-wide right of access reserved to the plaintiffs, the state maintains that the plaintiffs hold this access as an unrestricted right in fee appurtenant to their property. Consequently the commissioner of public works and highways can only impose reasonable regulations on the use of that access under the police powers granted to him by RSA 236:3 and RSA 249:17 (Supp. 1975). Such regulations cannot greatly impair or prohibit the use of the access unless it is purchased or taken by eminent domain with adequate compensation to the owners. The state therefore maintains that plaintiffs have a right under our law to construct a road to and from the traveled way of relocated Walnut Avenue which can be dedicated to the town to satisfy the requirements of its planning board.

It is generally agreed that the basic design and function of a limited access highway is to allow "for optimum mobility of through traffic by permitting owners and occupants of abutting land to have only a restricted right of physical access to and from the roadway and, where the right is available, only at points planned and controlled by the official highway plan." R. Netherton, Control of Highway Access 73 (1963); RSA 236:1; Annot., 42

A.L.R.3d 13, 19 (1972). Such control, however, must be exercised in a reasonable and nonarbitrary manner. *Gagne v. Morton,* 102 N.H. 114, 116, 151 A.2d 588, 589 (1959); *Fortin v. Morton,* 101 N.H. 477, 147 A.2d 644 (1958). This rule would apply to any action by the commissioner of public works and highways under the provisions of RSA 236:3 and RSA 249:17 (Supp. 1975).

■ The problem in every case of involuntary impairment of the right of access is to reconcile the conflicting interests, private and public, to arrive at a just balance so that the state will not be unduly restricted in the proper exercise of its functions for the public good and at the same time protect the abutting owner from unreasonable loss occasioned by the exercise of governmental power. *Webb v. Maine-N.H. Bridge Authority,* 102 N.H. 91, 96, 152 A.2d 521, 525 (1959); *Smith v. State Highway Comm'n,* 185 Kan. 445, 453–54, 346 P.2d 259, 267–68 (1959); *see* Annot., 42 A.L.R.3d 13 (1972). A reasonable solution to this problem can be arrived at by comparing the injury to the landowner in not being paid with the injury to the public in being required to pay for the diminution in value. *Village House, Inc. v. Loudon,* 114 N.H. 76, 314 A.2d 635 (1974); *Sibson v. State,* 115 N.H. 124, 336 A.2d 239 (1975); Note, *Compensation For Loss of Access Under Eminent Domain: An Evaluation of Proposed New York Legislation,* 26 Syracuse L. Rev. 899, 911 (1975); *see Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415 (1922).

The power to regulate access to highways conferred upon the commissioner by RSA 236:3 and RSA 249:17 (Supp. 1975) applies to all abutters on limited access highways and to abutters on certain other highways. Plaintiffs thus share the hardship resulting from regulation with all those other abutters. Therefore these damages are not peculiar to them. Rather they constitute general damages and are not compensable. *Cram v. Laconia,* 71 N.H. 41, 53, 51 A. 635, 641 (1901); *see Tilton v. Sharpe,* 84 N.H. 43, 46, 146 A. 159, 160 (1929). If such power to regulate were considered a taking subject to compensation, the already high cost of constructing such highways could well become beyond the financial ability of the state to pay. This would necessarily result in the absence of the type of highways which the safety of the travelling public requires. *See People v. Ricciardi,* 23 Cal. 2d 390, 396, 144 P.2d 799, 802 (1943).

■ We hold that subjecting the 50-foot-wide right of access reserved to the plaintiffs to the reasonable control of the commissioner of public works and highways is a regulation under the police power of the state to promote public safety and the general welfare and not a taking by eminent domain of private property because it is useful to the public. *Gagne v. Morton*, 102 N.H. 114, 116, 151 A.2d 588, 589 (1959); *Jones Beach Boulevard Estate, Inc. v. Moses*, 268 N.Y. 362, 368–69, 197 N.E. 313, 315 (1935); Roettger and Dickson, *Access Control: Improper Hybridization of Police Power in Condemnation Cases Involving Partial Takings of Land*, 6 Urb. Law 603, 610, 616 (1974).

■ We also hold that in this proceeding in eminent domain the commissioner's power of reasonable regulation of plaintiffs' right of access is not considered a restriction which would constitute grounds for damages. This holding is based on a reasonable interpretation of the statutes in question and is in accord with the administrative practices and procedures which the state has followed thereunder in obtaining such rights of access. *See Peterborough Savings Bank v. King*, 103 N.H. 206, 209, 168 A.2d 116, 118 (1961); *New Hampshire Retail Grocers Ass'n v. State Tax Comm'n*, 113 N.H. 511, 514, 309 A.2d 890, 892 (1973). It follows that the state's motion for a ruling of law that under the declarations of taking and the return of layout the plaintiffs have an unrestricted right of access in fee fifty feet in width to and from their property abutting relocated Walnut Avenue should have been granted in these proceedings in eminent domain for damages.

*Exception sustained.*

Bois and Douglas, JJ., did not sit; Grimes, J., dissented; the others concurred.