Hillsborough
No. 78-044

THE STATE OF NEW HAMPSHIRE

v.

FRANCIS D. SHANAHAN & a.

July 18, 1978

*David H. Souter*, attorney general (*James E. Morris*, assistant attorney general, orally), for the State.

*Wadleigh, Starr, Peters, Dunn & Kohls*, of Manchester (*Eugene M. Van Loan III*, orally), for the defendants.

BOIS, J.   In this condemnation proceeding the following question of law was transferred in advance of trial by the Superior Court (*Flynn*, J.):

> Are the condemnees entitled to compensation not only for the land taken but also for the diminution, if any, in the market value of the [untaken] property caused by any impairment of access occasioned by the installation of curbing?

We rule that the condemnees are entitled to compensation only if the impairment of their right of access is substantial.

Defendant Shanahan was the owner of a 10,000-square-foot lot situated at the intersection of South Willow Street and Upton Street in Manchester, New Hampshire. Defendant Amoskeag Savings Bank was the holder of a mortgage on the property. The lot, which fronted for 100 feet on South Willow Street and 100 feet on Upton Street, was improved with a two-bay gasoline service station and two gasoline pump islands. The portions of the lot fronting the streets were paved but not curbed. Access was unrestricted.

On June 5, 1974, the State filed in Hillsborough County Superior Court a declaration of taking against a portion of defendant Shanahan's property. RSA 498-A:5 (Supp. 1977). The land was to be used in a project to widen South Willow Street. The State took a triangle of 38 square feet at the corner of South Willow and Upton Streets, and a slope easement of 160 square feet. In addition, the State installed curbing along the edges of the defendant's remaining property. The curbing restricts access to two 25-foot-wide points along South Willow Street and to 82 feet along Upton Street. The eminent domain commission held a hearing to assess just compensation for the taking. RSA 498-A:24 (Supp. 1977). The commission awarded $6,700 in damages, which included an award for diminution in value caused by the installation of curbing. The State filed a petition for a reassessment of damages by a jury in superior court. RSA 498-A:27 (Supp. 1977). *See generally State v. Garceau*, 118 N.H. 321, 387 A.2d 330 (1978). The superior court transferred the above question on an agreed statement of facts for our determination.

The State curbed part of the defendant's property pursuant to a street-widening program authorized by RSA chs. 232, 233. No claim is made that the State acted ultra vires. Nor does the defendant claim that he was totally deprived of access to any street on which his property fronts. He does claim that *any* restriction on the amount of access, no matter how limited, entitles him to compensation for any decline in the value of his property. We disagree.

The law is well settled in New Hampshire that a landowner's right of access may be limited by public regulations. *E.g., Metzger v. Town of Brentwood*, 117 N.H. 497, 374 A.2d 954 (1977); *Treat v.*

*State*, 117 N.H. 6, 369 A.2d 214 (1977); *Tilton v. Sharpe*, 84 N.H. 43, 146 A. 159 (1929). This principle accords with the jurisprudence of most other American jurisdictions. *See, e.g., 489.137 Square Feet of Land v. State ex rel. Price*, 259 A.2d 378, 380 (Del. 1969); *Lacroix v. Commonwealth* 348 Mass. 652, 205 N.E. 2d 228 (1965); *Armenian Church v. Director of Pub. Works*, 116 R.I. 735, 360 A.2d 534 (1976); Roettger & Dickson, *Access Control: Improper Hybridization of Police Power in Condemnation Cases Involving Partial Takings of Land*, 6 Urb. Law. 603, 610 *passim* (1974). However, at some point the right of access becomes so restricted by State action that it must be deemed "taken," and the State must compensate the landowner for such taking. *See Treat v. State*, 117 N.H. at 9, 369 A.2d at 216; *Capitol Plumbing & Heating Supply Co. v. State*, 116 N.H. 513, 514, 363 A.2d 199, 200 (1976); *cf. Grossman v. Town of Gilford*, 118 N.H. 480, 387 A.2d 1178 (1978). No set formula exists to determine when regulation ends and taking begins. *Sibson v. State*, 115 N.H. 124, 127, 336 A.2d 239, 241 (1975). Rather, the difference between a noncompensable exercise of the police power and a compensable exercise of the eminent domain power "is one of degree of harm to the property owner. To be compensable, the damage must be substantial and amount to ' "severe interferences which are tantamount to deprivations of use or enjoyment of property." ' " *Village House, Inc. v. Town of Loudon*, 114 N.H. 76, 79, 314 A.2d 635, 637 (1974). Each case must be examined on its facts.

We therefore hold that in the case at bar the defendant is entitled to compensation if he can show that the value of his property was substantially diminished by the limitation of access. Otherwise, the diminution in the property's value is a general, noncompensable loss. *See Treat v. State*, 117 N.H. at 10, 11, 369 A.2d at 217 (1977).

A finding that alternative means of access are available to a landowner would militate against the conclusion that a restriction of a particular point of his access is a taking. However, the alternative means of access must be reasonable. *Wolfe v. Windham*, 114 N.H. 695, 698, 327 A.2d 721, 723 (1974) (Grimes, J., dissenting). Also, what might be considered a merely inconvenient or circuitous alternative means of access for one landowner might be an unreasonable alternative for another. *See Note, Compensation for Loss of Access Under Eminent Domain: An Evaluation of Proposed New York Legislation*, 26 Syracuse L. Rev. 899, 901 n.19 (1975) (a restriction of access might be "particularly damaging to land with a commercial

use which depends on easy and convenient access or an established traffic flow for its continued patronage"). In weighing the private against the public interests, the particular use or uses of the regulated property must be taken into account. *But see Tilton v. Sharpe*, 85 N.H. 138, 155, A. 44 (1931).

The landowner in the case at bar has asked this court to rule that his loss of access was substantial as a matter of law and therefore compensable. However, whether the loss of access was substantial is not a question properly before us. The only question reserved and transferred to this court is whether, as a general proposition, the landowner is entitled to compensation for any diminution in value of his property occasioned by any restriction, however slight, on the amount of access. We have answered that question. Moreover, we think that the question of the substantiality of the loss of access in this case is not ripe. On remand there will be a jury trial on damages in the superior court. RSA 498-A:27 (Supp. 1977). Such a trial assesses damages de novo. *Id. See generally State v. Garceau*, 118 N.H. 321, 387 A.2d 330 (1978). Because the superior court trial might result in a determination of damages different from that made by the eminent domain commission, there is no reason for us to decide whether on the basis of the eminent domain commission's findings the State substantially impaired the defendant's right of access.

*Remanded*

BROCK, J., did not sit; the others concurred.