13 A.3d 256 (2010)
ALLIANZ GLOBAL RISKS U.S. INSURANCE CO. and another
v.
The STATE of New Hampshire and another.
No. 2009-745.
Supreme Court of New Hampshire.
Argued: June 15, 2010.
Opinion Issued: November 10, 2010.
*258 Campbell Campbell Edwards & Conroy, of Boston, Massachusetts (Adam A. Larson on the brief) and Denenberg Tuffley, PLLC, of Southfield, Michigan (Charles R. Tuffley and another on the brief, and Jeffrey R. Learned orally), for the plaintiffs.
Michael A. Delaney, attorney general (Kevin H. O'Neill, assistant attorney general, on the brief and orally), for defendant State of New Hampshire.
Ransmeier & Spellman, P.C. of Concord (Daniel J. Mullen on the memorandum of law and orally) and Ronald F. Kehoe, assistant attorney general, of Boston, Massachusetts, on the memorandum of law, for defendant Commonwealth of Massachusetts.
CONBOY, J.
The plaintiffs, Allianz Global Risks U.S. Insurance Company (Allianz) and Henkel Corporation (Henkel), appeal a ruling of the Superior Court (McHugh, J.) denying their motion for summary judgment and granting summary judgment to the defendants, the State of New Hampshire and the Commonwealth of Massachusetts. We affirm.
The following facts were either found by the trial court or are undisputed by the parties. Henkel, a manufacturer of adhesives and related products, owns a sixteen-acre parcel of land in Seabrook that abuts Interstate Route 95 (I-95) near the New Hampshire-Massachusetts border. At all relevant times, Allianz insured the property. Beginning on May 13, 2006, the area experienced extraordinary rainfall of up to ten inches. Henkel's property was flooded, causing extensive damage to Henkel's personal and real property. As a result, Allianz paid Henkel in excess of two million dollars, while Henkel remained responsible for its insurance policy's $500,000 deductible. The building that houses Henkel's operations had flooded once before, during a hurricane in October 1996.
The pertinent portion of I-95 was constructed in 1948 and was widened in 1967. The defendants shared responsibility for building a deceleration lane near the Henkel property in 1998.
The plaintiffs commenced this action in July 2007, alleging one count of inverse condemnation.
In their claim against the State of New Hampshire, they contend that, but for the design and construction of I-95, Henkel's property would not have flooded. As to the Commonwealth of Massachusetts, they allege that construction of the deceleration *259 lane contributed to the conditions that caused the flood.
The plaintiffs rely on the report of their expert geoscientist, Dr. Theodore Hromadka, who concluded that the highway embankment acted as a dam, forcing excessive amounts of water to be deposited on Henkel's property. He identified two factors that contributed to the 2006 flood damage: (1) the size and location of a culvert running under I-95, which caused a ponding of water on the Henkel property; and (2) the construction of the deceleration lane that reduced culvert flow, raising ponding elevations on the property.
In contrast, the State's expert identified the inadequacy of a culvert under Henkel's building as the cause of the 2006 flood damage. That culvert is Henkel's responsibility and is much smaller than the I-95 culvert. Both experts agreed that the rainfalls which caused both the 1996 and 2006 floods, in which some ten inches of rain fell over a one or two day period, were rare and unusual events. The State's expert described both storms as "100 year occurrences."
The trial court ruled that, as a matter of law, the plaintiffs' inverse condemnation claim failed for three reasons. First, "the loss of use of the Henkel Corporation property was temporary, not permanent, and therefore did not result in a `taking.'" Second, damage to the Henkel property during the 2006 flood was caused by an act of God. Third, no reasonable jury could have found that an act or omission on the part of either of the defendants caused or contributed to the flood.
On appeal, the plaintiffs argue that, contrary to the trial court's ruling, a temporary taking of real property is compensable under New Hampshire law. They further allege that, apart from a taking of Henkel's real property, there was also a $1 million permanent taking of Henkel's personal property which was destroyed in the flood. The plaintiffs further maintain that summary judgment was not warranted because genuine issues of material fact remained as to whether the flood damage resulted from an act of God and whether acts or omissions of the defendants caused or contributed to the flood damage.
"In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." Big League Entm't v. Brox Indus., 149 N.H. 480, 482, 821 A.2d 1054 (2003). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." Id. "We review the trial's court's application of the law to the facts de novo." Id.
"Inverse condemnation occurs when a governmental body takes property in fact but does not formally exercise the power of eminent domain. Inverse condemnation may be effected through either physical act or regulation. We look to the individual circumstances of each case to determine whether there is an unconstitutional taking." Pennichuck Corp. v. City of Nashua, 152 N.H. 729, 733, 886 A.2d 1014 (2005) (citations omitted).
The plaintiffs are correct that temporary takings of property are compensable in New Hampshire. See Smith v. Town of Wolfeboro, 136 N.H. 337, 615 A.2d 1252 (1992); Burrows v. City of Keene, 121 N.H. 590, 432 A.2d 15 (1981); Sundell v. Town of New London, 119 N.H. 839, 409 A.2d 1315 (1979). "Governmental action which substantially interferes with, or deprives a person of, the use of his property in whole or in part, may . . . constitute a taking, even if the land itself is *260 not taken." Sundell, 119 N.H. at 845, 409 A.2d 1315 (upholding an inverse condemnation claim for injury to the property rights of landowners where algae blooms caused by the defendant's intentional discharge of effluent had polluted waters adjacent to plaintiffs' shoreline, but would dissipate over time).
To prevail on an inverse condemnation claim, however, a plaintiff "must establish that treatment under takings law, as opposed to tort law, is appropriate under the circumstances." Ridge Line, Inc. v. United States, 346 F.3d 1346, 1355 (Fed. Cir.2003). First, "a property loss compensable as a taking only results when the government intends to invade a protected property interest or the asserted invasion is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action." Id. (quotation and citation omitted; emphasis added). Second, the court must "consider whether the government's interference with any property rights of [the plaintiff] was substantial and frequent enough to rise to the level of a taking." Id. at 1357; Cary v. United States, 552 F.3d 1373, 1376-77 (Fed.Cir.2009).
"[I]solated invasions, such as one or two floodings, do not make a taking, but repeated invasions of the same type have often been held to result in an involuntary servitude." Ridge Line, 346 F.3d at 1357 (quotation omitted). "Generally speaking, property may be taken by the invasion of water where subjected to intermittent, but inevitably recurring, inundation due to authorized Government action." Barnes v. United States, 538 F.2d 865, 870 (Ct.Cl.1976) (finding a taking of plaintiffs' land which was flooded on an intermittent, but sustained basis as a result of intentional releases from a government reservoir system, where the parties stipulated that the releases would continue in future years). "Government-induced flooding not proved to be inevitably recurring occupies the category of mere consequential injury, or tort." Id. "[I]n order to create an enforceable liability against the Government, it is at least necessary that the overflow be the direct result of the structure, and constitute an actual, permanent invasion of the land, amounting to an appropriation and not merely an injury to the property." Sanguinetti v. United States, 264 U.S. 146, 149, 44 S.Ct. 264, 68 L.Ed. 608 (1924).
The plaintiffs cite Capitol Plumbing & Heating Supply Co. v. State of New Hampshire, 116 N.H. 513, 363 A.2d 199 (1976), in which recovery was permitted though "there was no indication the event which caused the compensable temporary taking was likely to recur." In that case, however, the property owner's legal right of way was taken under the State's eminent domain power and thus not subject to the recurrence requirement. Here, the plaintiffs have produced no evidence that the circumstances which caused the flood damage are inevitably recurring. On the contrary, experts for both sides agreed that the 2006 storm was a rare event. Under the circumstances, we conclude that there has been no taking of Henkel's real property.
As to the plaintiffs' allegation that there was a permanent taking of Henkel's personal property destroyed in the flood, the plaintiffs acknowledged at oral argument that New Hampshire case law has not recognized claims for the inverse condemnation of personalty. They urge us to do so now and cite Hawkins v. City of La Grande, 315 Or. 57, 843 P.2d 400 (1992), in which the Oregon Supreme Court ruled that a jury should be allowed to consider a claim for inverse condemnation of personal property where no land was taken. That case, however, provides no support because *261 the personal property damage there allegedly occurred as a result of intentional governmental conduct that directly caused the personal property loss. When unusual weather conditions threatened the overflow of La Grande's sewer ponds, employees of the city's sewer treatment plant intentionally released sewage-laden water, which flooded the plaintiffs' farmland, killing crops and livestock. Here, however, the governmental conduct at issuethe construction of I-95did not constitute an intentional invasion of Henkel's property; thus, the personal property damage constituted, at most, consequential damage resulting from government conduct.
We recognize that several states permit claims for the inverse condemnation of personal property, including California, Florida, Louisiana, and Missouri. See Sutfin v. State, 261 Cal.App.2d 50, 67 Cal. Rptr. 665, 666 (1968); Flatt v. City of Brooksville, 368 So.2d 631 (Fla.Dist.Ct. App.1979); Holzenthal v. Sewerage & Water Bd. of New Orleans, 950 So.2d 55 (La. Ct.App.2007); Shade v. Missouri Highway and Transp. Com'n, 69 S.W.3d 503 (Mo.Ct. App.2001).
Even states that allow compensation for the inverse condemnation of personal property, however, preserve the distinction between compensable takings and mere consequential injuries, even for the total destruction of personal property. See South Florida Water v. Basore of Florida, 723 So.2d 287, 289 (Fla.Dist.Ct. App.1998) (holding that the destruction of crops in that case was "a consequential damage resulting from the temporary flooding and not a constitutional taking"); Broward County v. Rhodes, 624 So.2d 319 (Fla.Dist.Ct.App.1993) (concluding, "[u]nless Plaintiffs can demonstrate that a taking of constitutional dimension has occurred, any recovery would be limited to Plaintiffs' companion claim of negligence"); cf. In re Forfeiture of 1976 Kenworth Truck, 576 So.2d 261 (Fla.1990) (finding meritorious inverse condemnation claim where plaintiff's truck was not returned for two years after government lost forfeiture proceedings and court ordered the truck's return).
The facts of Warner/Elektra/Atlantic Corp. v. County of DuPage, 991 F.2d 1280 (7th Cir.1993), are similar to those here. The plaintiff's warehouse was located 800 feet from a county highway. A drainage ditch along the property ran under the highway. Torrential rains caused the drainage ditch to overflow and flood the warehouse on two occasions. There was evidence at trial that alterations to the highway had contributed to the flooding by impeding drainage flow. The plaintiff alleged inverse condemnation of the personal property in the warehouse that had been destroyed by the flood waters. Under these circumstances, the court characterized the destruction of the personal property not as a taking, but as consequential damage. Id. at 1285.
We conclude that, as in Warner/Elektra/Atlantic, the alleged destruction of Henkel's personalty constituted only consequential damage and, accordingly, is not compensable as a taking. Thus, we need not address whether an inverse condemnation claim is cognizable for loss of personalty. In light of our decision here, we need not address the plaintiffs' remaining arguments.
Affirmed.
BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.